# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Jeffrey J. JONSSON,
## Boatswain's Mate Second Class (E-5), U.S. Coast Guard

## CGCMS 24375

## Docket No.  1285

## January 30, 2009

Special Court-Martial convened by Commander, Seventh Coast Guard District.  Tried at St. Petersburg, Florida, on 3 April 2007.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LCDR Donald L. Brown, USCG |
| Assistant Trial Counsel: | LCDR Thomas R. Brown, USCG |
| Defense Counsel: | LTJG Jonathan C. McKay, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Necia L. Chambliss, USCGR |
| Appellate Government Counsel: | LT Ronald B. Seely, USCGR |

## BEFORE
## McCLELLAND, KENNEY & TOUSLEY
Appellate Military Judges

KENNEY, Judge:

Appellant was tried by special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of two specifications of false official statement, in violation of Article 107, Uniform Code of Military Justice (UCMJ); and one specification of adultery, in violation of Article 134, UCMJ.  The military judge sentenced Appellant to a bad-conduct discharge, confinement for thirty days, forfeiture of $1,261 for one month, and reduction to E-3.  The Convening Authority approved the sentence as adjudged.  The pretrial agreement had no effect on the adjudged sentence.

Before this Court, Appellant has assigned three errors:

  I.   The adjudged sentence to a forfeiture in the amount of $1,261 for one month exceeded the jurisdictional maximum of the court-martial.

  II.   Appellant's plea to the additional charge of violating Article 134, UCMJ (adultery), was improvident because there was insufficient evidence the singular act was prejudicial to good order and discipline or was service-discrediting.

  III.   A bad-conduct discharge is an inappropriately severe sentence for a false official statement and one night of adultery with no discernible impact on the command or the public.

For the reasons discussed below, we grant sentence relief on the adjudged forfeiture, set aside the finding of guilty on the charge of adultery and dismiss it, and reassess the sentence in light of these holdings.  Because of our holding on assignment of error II, we need not reach assignment of error III.

**Adjudged Forfeiture**

Rule for Courts-Martial 1003(b)(2) states that "a sentence to forfeiture shall state the exact amount in whole dollars to be forfeited each month and the number of months the forfeitures will last. . . . If the sentence also includes reduction in grade, expressly or by operation of law, the maximum forfeiture shall be based on the grade to which the accused is reduced."  Rule for Courts-Martial (R.C.M.) 1003(b)(2), Manual for Courts-Martial (MCM), United States (2005 ed.)[1]  The military judge reduced Appellant to paygrade E-3, but adjudged a forfeiture in the amount of $1,261 for one month, an amount correlating to Appellant's pay as an E-5.[2]  The pay for an E-3 at the time of trial was $1729.20[3], two-thirds of which would be $1152 (rounded down), the jurisdictional maximum.  As the forfeiture awarded by the military judge

---

[1] The 2005 edition of the Manual for Courts-Martial was in effect at the time of the offenses resulting in these charges.

[2]  The record reveals a string of errors in the description of the adjudged forfeiture in this case.  The military judge announced the sentence as "to forfeit $1261 for one month."  The trial counsel, in his report of result of trial required by R.C.M. 1101, erroneously reported the forfeiture as "a fine in the amount of $1261."  The Staff Judge Advocate, in his recommendation required by R.C.M. 1106, corrected the trial counsel's error, but while making specific recommendations on the adjudged confinement, reduction in rate, and punitive discharge pursuant to R.C.M. 1106(d)(3)(F), made no recommendation to the Convening Authority with respect to the adjudged forfeiture.  Ultimately, the Convening Authority approved and ordered executed "forfeiture of $1261" without specifying a period of months as required by R.C.M. 1003(b)(2).  While the Convening Authority's approval of the adjudged forfeiture exceeded the jurisdictional maximum as described *infra*, neither the errors of the trial counsel and Staff Judge Advocate nor the failure of the Convening Authority to specify a period of months renders the sentence ambiguous.  *See United States v. Harris,* 67 M.J. 550 (C.G.Ct.Crim.App. 2008).

exceeded that jurisdictional maximum, we provide appropriate relief in the decretal paragraph below.

**Plea to the Charge of Adultery**

The standard of review for determining if a guilty plea is provident is whether the record presents a substantial basis in law and fact for questioning it. *See, e.g., United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991). The record must contain a sufficient factual basis to support a guilty plea. R.C.M. 910(e); *United States v. Care,* 18 USCMA 535, 40 C.M.R. 247 (1969). But "[t]he providence of the plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (*citing Care*, 18 USCMA at 538-39, 40 C.M.R. at 250-51). Given that understanding, the accused must believe and admit every element of the offense. *United States v. Whiteside*, 59 M.J. 903, 906 (C.G.Ct.Crim.App. 2004) (citing R.C.M. 910(e) Discussion).

Appellant pled guilty to two specifications of false statements in violation of Article 107, UCMJ. The object of these false statements was to conceal a sexual encounter, including intercourse, with Seaman F, a female Coast Guardsman with whom appellant had served aboard USCGC HAMILTON (WHEC 715). Appellant also pled guilty to a specification of adultery in violation of Article 134, UCMJ. Thus, this case presents the nowadays rarely seen situation of an accused's alleged adultery being the primary factual predicate for a court-martial.

Although many jurisdictions have de-criminalized adultery[4], it remains a punishable offense in the military. "Adultery is clearly unacceptable conduct, and it reflects adversely on the service record of the military member." MCM, Pt. IV, ¶ 62.c.(1). But not every act of adultery by a servicemember constitutes an offense under the UCMJ. The elements of the offense are (1) that the accused wrongfully had sexual intercourse with a certain person; (2) that, at the time, the accused or the other person was married to someone else; and (3) that, under the

---

[3] *See* Defense Finance and Accounting Service, Military Pay Table, effective 01 April 2007, http://www.dfas.mil/militarypay/militarypaytables/2007MilitaryPayChartst-1.doc

3

circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MCM, Pt. IV, ¶ 62.b. It is the third element that gives the offense its criminal character in our military justice system, and it is the "prejudice to good order and discipline in the armed forces" clause of the third element upon which this case turns.[5]

Prior to 2002, the Manual for Courts-Martial explanation of the third element of the adultery offense defaulted to the general explanation of that element for all Article 134 offenses. For example, the 2000 edition of the Manual explained the third element thusly: "'To the prejudice of good order and discipline' refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. . . . It is confined to cases in which the prejudice is *reasonably* direct and palpable." MCM Pt. IV, ¶ 60.c.(2)(a) (2000 ed.) (emphasis added). In 2002, the President created a separate explanation of the third element of Article 134 for adultery offenses, Exec. Order No. 13,262, 67 F.R. 18773, 18778 (2002), incorporated in the 2002 version of the MCM and subsequent editions. "To constitute an offense under the UCMJ, the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting. Adulterous conduct that is directly prejudicial includes conduct that has *an obvious, and measurably divisive effect* on unit or organization discipline, morale, or cohesion, or is *clearly detrimental* to the authority or stature of or respect toward a servicemember." MCM, Pt. IV, ¶ 62.c.(2) (2005 ed.) (emphasis added). The current explanation then goes on to describe several relevant factors for use in determining whether adulterous conduct is directly prejudicial, including military status of the co-actors, the marital status of the co-actors, the impact of the conduct on the unit and remoteness in time of the conduct, among other things. Pt. IV, ¶ 62.c.(2)(a)-(i). These circumstances are styled as guidance to commanders considering UCMJ action for adulterous acts vice further explanation of the elements of the offense.

---

[4] *See, e.g.,* 2004 D.C. Sess. Law Serv. 15-154 § 3(b) (West) (repealing D.C. Code § 22-201); 1978 N.J. Laws c. 95 § 2C:98-2 (repealing N.J. Stat. Ann. § 2A:88-1); 1976 Ind. Acts P.L.148 Sec. 24 (repealing Ind. Code § 35-1-82-2); 1975 Cal. Stat. ch. 71 §§ 5-6 (repealing Cal. Penal Code §§ 269a-b).

[5] The record reveals no indications that anyone outside the Coast Guard knew of the adulterous act, thus the "service discrediting" clause of the third element is not at issue in this case, nor was it discussed during the providence inquiry.

The change produced by the new language concerning the third element of the adultery offense has been described as a narrowing of the scope of the offense under the UCMJ. *See* Joint Annual Report of the Code Committee Pursuant to the Uniform Code of Military Justice (October 1, 2002 to September 30, 2002)*, reprinted at* 59 M.J. LXXIII (2004)*.* The new explanatory language also tends to limit the range of permissible inferences under the former "reasonably direct and palpable" analysis. Since 2002, there must be "obvious," "measurably divisive" effects, or "clear" detriments to authority or stature, or the like. To accept a guilty plea for an adultery offense in violation of Article 134, the military judge should ensure that the narrow nature of the third element is understood by the accused.

During the providence inquiry in this case, the military judge began the inquiry into the adultery offense as follows:

> MJ: In pleading guilty to the additional charge you've pled guilty to the offense of adultery. The elements of that offense are as follows: One, that on or about the 19th of November, 2005, you wrongfully had sexual intercourse with [Seaman F] The second element is that at the time you were married to someone else. And the third element is that under the circumstances your conduct was prejudicial to good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.
>
> Conduct prejudicial to good order and discipline is conduct *that causes a reasonably direct and obvious injury to good order and discipline.* Service discrediting is conduct that tends to harm the reputation of service or lower the public esteem. . . . Not every act of adultery constitutes an offense under the UCMJ. Your conduct must also have been prejudicial to good order and discipline in the Armed Forces or of a nature to bring discredit upon the Armed Forces. All right.

(R. at 44-45) (emphasis added).

It appears that the military judge described and explained the elements of the adultery offense by drawing language from the Military Judges' Benchbook, DA Pamphlet 27-9, § 3-62-1 (2003). The explanation of the "conduct prejudicial" clause of the third element in the Benchbook reflects the pre-2002 explanation provided in older editions of the Manual for Courts-Martial, not the narrowed explanation provided by Executive Order 13262. *Compare* Benchbook §3-62-1(d) *with* MCM, Pt. IV, ¶ 62.c.(2). The Benchbook, at §3-62-1(d) n.2, does

indeed explain the "conduct prejudicial" clause of the third element of the adultery offense using language corresponding to the current MCM text, but the military judge did not read from Note 2 during the providence inquiry, allowing the possibility that Appellant did not understand how the law related to the facts elicited during the providence inquiry. While "[s]ome leeway must be afforded the trial judge concerning the exercise of his judicial responsibility to explain a criminal offense to an accused servicememember," *United States v. Roeseler*, 55 M.J. 286, 289 (C.A.A.F. 2001), any explanation given should be complete enough that the accused understands how the law relates to the facts. *Medina,* 66 M.J. at 26.

There was nothing in Appellant's responses during the inquiry to inspire confidence that he understood the law, as established in the MCM, in relation to the facts. When the military judge asked him why he thought his act of adultery was prejudicial to good order and discipline or service-discrediting, the following colloquy ensued:

> ACC: Because my command knew I was married, sir, and I had sexual intercourse with a seaman who I was directly supervising, sir.
>
> MJ: All right. How about suppose other seamen who are part of the Deck Department found out you were having sexual intercourse with one of their peers, what do you think they would think?
>
> ACC: It would bring disorder -- I'm sorry. It would be somewhat disgraceful to our command.
>
> MJ: Do you think that they might think less of you as a petty officer?
>
> ACC: Yes, Your Honor.

(R. at 49.) While this was sufficient to verify that Appellant believed and admitted his guilt, a higher level of articulation is called for to show an understanding of the law when it has not been accurately explained, particularly in light of the speculative tenor of the colloquy above regarding impacts on other members of the HAMILTON crew.

Moreover, the factual basis elicited to support the plea was inadequate. The parties stipulated that Appellant (an E-4 at the time) was the direct supervisor of Seaman F (an E-3) aboard HAMILTON, and that he was responsible for approximately forty deck crewmembers

(Prosecution Ex. 1 at ¶ 4). During the providence inquiry, Appellant verified this (R. at 25), and testified that he gave her assignments and supervised her work (R. at 48). He identified the supervisory relationship as the basis for the prejudice to good order and discipline involved in his adultery offense (R. at 49). However, the pre-sentencing evidence indicates that the sexual encounter between Appellant (who was legally separated at the time) and Seaman F (who was single) took place on her last night in San Diego prior to reporting to a training unit (R. at 82). The record is not clear as to whether Seaman F was still attached to HAMILTON, or already detached and enroute to her next unit, but this evidence surely conflicted with the ramifications of his testimony that he had a supervisory relationship with her, for if that relationship no longer existed at the time of the encounter, his basis for prejudice to good order and discipline was significantly weakened. While an adulterous relationship between two personnel assigned to different units could have impacts sufficiently prejudicial to good order and discipline to fulfill the third element of the adultery offense, the record must identify those impacts. In this case, the record is devoid of such information.[6]

R.C.M. 910(h)(2) reads:

> *Statements by accused inconsistent with plea*. If after findings but before the sentence is announced the accused makes a statement to the court-martial, in testimony or otherwise, or presents evidence which is inconsistent with a plea of guilty on which a finding is based, the military judge shall inquire into the providence of the plea. If, following such inquiry, it appears that the accused entered the plea improvidently or through lack of understanding of its meaning and effect a plea of not guilty shall be entered as to the affected charges and specifications.

---

[6] Indeed, whether the existence of a supervisor/subordinate relationship between the accused and Seaman F, standing alone, would give rise to a permissible inference of conduct prejudicial to good order and discipline *per se,* is questionable. Per Coast Guard service regulations, a romantic relationship between two junior enlisted personnel in a supervisor/subordinate situation is not considered a "prohibited" relationship punishable under Article 92, UCMJ. It is an "unacceptable" relationship that is to be dealt with administratively. Coast Guard Personnel Manual, COMDTINST M1000.6A, ¶ 8.H.2.d.3.c., ¶ 8.H.2.f. To become a "prohibited" relationship under these regulations requires additional facts showing obvious impact on good order and discipline (none of which is related to adulterous conduct), such as sexual activity aboard a Coast Guard unit, significant rank disparity between the co-actors, or an instructor/student relationship at a training command. *Id.* at ¶ 8.H.2.g. If the Coast Guard has made a policy determination that the impacts on good order and discipline of a romantic relationship between two junior personnel in a supervisor/subordinate situation are not so detrimental as to warrant military justice action, it should give the military judge pause before inferring that the mere fact of marriage alone provides sufficient additional impacts to meet the narrowed explanation of the third element of the adultery offense. However, we need not decide that issue here; the conflict concerning the putative supervisor/subordinate relationship drives our holding in the instant case.

In this case, the inconsistency arose from the testimony of Seaman F, as a government witness in aggravation. We do not perceive that it makes a difference which party is the source of the inconsistency. If the record ultimately contains an inconsistency with the factual basis for the plea, the military judge is required to re-open the providence inquiry and resolve the inconsistency or reject the plea. *See United States v. Stewart*, 29 M.J. 92 (C.M.A. 1989). The providence inquiry should have been re-opened in this case.

The record reveals another weakness in the factual basis, where the link between admitted conduct and effect on good order and discipline is not established. During the providence inquiry, the accused, when asked if anyone at the unit knew of the encounter, replied "Only a select few, Your Honor, but eventually, yes, sir," (R. at 47). While one might argue that an adulterous relationship between a supervisor and a subordinate would have an obvious divisive effect on the work group, such an inference would be inoperative if the rest of Appellant's subordinates were unaware of the encounter, so that no detrimental reaction to the relationship could occur. This point required further exploration by the military judge: who were the select few, and what, if any impacts resulted from their knowledge of the encounter?

After reviewing the record, we conclude that the record contains a conflict that was not resolved in the providence inquiry. We further conclude that the providence inquiry does not establish a sufficient factual basis to demonstrate prejudice to good order and discipline, nor a showing that, given the explanation of the adultery offense provided by the military judge, the accused understood the law as it related to the facts. Therefore we cannot approve the acceptance of a plea of guilty for the offense of adultery.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings on the Additional Charge and its sole Specification are set aside and the Charge and Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence in light of our decision on findings, only so much of the sentence as provides for confinement for thirty days, forfeiture of $1152 per month for one month and reduction to E-3 is approved.

Judge TOUSLEY concurs.

Chief Judge MᴄCLELLAND (concurring in part and in the result):

I concur on reduction of the forfeiture. Concerning adultery, I concur with the conclusion that the record contains a conflict that was not resolved, rendering the plea to adultery improvident. I do not concur that there was an insufficient factual basis before the conflict arose, and I would not reach the question of whether Appellant had sufficient understanding of the law.

A guilty plea should not be overturned based on a mere possibility of a defense, and appellate courts should not speculate as to the existence of facts that might invalidate a guilty plea. *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996). The majority alludes to the possibility that Appellant's subordinates were unaware of his encounter with Seaman F, even though "a select few" people at the unit did know, and holds the lack of inquiry on the point to be a defect. It would have been better if the military judge had inquired on the point, but surely this is a mere possibility of a defense.

Concerning Appellant's understanding of the law of adultery under Article 134, UCMJ, I would not defend the failure of the military judge to explain the elements using the MCM language of 2002 and after. Still, it is by no means clear that the new language, "conduct that has an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion, or is clearly detrimental to the authority or stature of or respect toward a servicemember," is so different from the language the military judge used, "conduct that causes a reasonably direct and obvious injury to good order and discipline," as to absolutely require that it be explained to an accused who is pleading guilty to adultery. It is unnecessary for us to reach that issue, given the dispositive nature of the evident conflict in the record concerning whether Appellant was, at the time of their sexual encounter, Seaman F's supervisor.



For the Court,


Ryan M. Gray
Clerk of the Court