# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, BERG, and YOB
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant DAVID B. JONES**
**United States Army, Appellant**

ARMY 20090401

Headquarters, United States Army Intelligence Center of Excellence and Fort
Huachuca
Kurt J. Bohn, Military Judge
Colonel Karen L. Judkins, Staff Judge Advocate (pretrial & addendum)
Lieutenant Colonel Joseph A. McCloskey, Acting Staff Judge Advocate
(recommendation)

For Appellant: Colonel Mark Tellitocci, JA; Lieutenant Colonel Imogene M.
Jamison, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Captain Tiffany K.
Dewell, JA (on brief).

For Appellee: Major Amber J. Williams, JA; Major Ellen S. Jennings, JA; Captain
Edward J. Whitford, JA (on brief).

14 December 2011

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BERG, Judge:

A military judge, sitting as a special court-martial, convicted appellant, contrary to his pleas, of violating a lawful general regulation and adultery in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (2008) [hereinafter UCMJ].[1]  The military judge sentenced appellant to be

---

[1] Appellant was charged at the outset with ten specifications alleging attempted unlawful sexual contact, two violations of a no-contact order, three violations of a lawful general regulation, assault, disorderly conduct, adultery and making a threat to impede an investigation in violation of Articles 80, 90, 92, and 134, UCMJ, 10 U.S.C. §§ 880, 890, 892, and 934.  The military judge initially found appellant not

(continued . . .)

reduced to the grade of Private E-1, confinement for six months, forfeiture of two-thirds pay per month for six months, and a bad-conduct discharge.[2]  The convening authority corrected the adjudged sentence to reflect reduction to the grade of E-1, confinement for six months, forfeiture of $932.00 in pay per month for six months, and a bad-conduct discharge.

This case is before this Court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.  Appellant raises four assignments of error, one of which merits discussion and relief.[3] Because our resolution of that assignment of error results in a determination that the evidence is insufficient to support either of appellant's convictions, we do not reach the remaining issues.

## BACKGROUND

Appellant, a staff sergeant, was charged with and convicted of committing adultery with Specialist (SPC) AJ and of transporting Private E-2 (PV2) ZA, an Initial Entry Training Soldier, in his privately owned automobile in violation of Training and Doctrine Cmd. Reg. 350-6, Training: Enlisted Initial Entry Training (IET) Policies and Administration [hereinafter TRADOC Reg. 350-6] (8 May 2007). A single Soldier, appellant was temporarily assigned to Fort Huachuca as a student, seeking to reclassify his military occupational specialty (MOS) from 31B, military policeman, to 35M, interrogator, as a reenlistment option. Because he had long since completed IET, he was classified as an "MOS-Trainee" (MOS-T) to distinguish him from Soldiers new to military service even though they might be in the same level classes.  We first address the purported regulatory violation.

---

(continued . . .)
guilty of all but one no-contact violation, the adultery specification, and one violation of a lawful general regulation.

[2] The confinement and forfeiture components of the sentence initially were assessed at eight months.  During post-trial processing, appellant successfully raised a discovery violation by the government before the record of trial was authenticated and the military judge set aside the remaining no-contact violation.  The military judge reassessed the sentence to six months of confinement and the partial forfeitures noted above, leaving the reduction to Private E-1 and the bad-conduct discharge intact.

[3] IV. THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT AS TO SPECIFICATION 2, CHARGE III, VIOLATION OF A GENERAL REGULATION IN VIOLATION OF ARTICLE 92, AND SPECIFICATION 2, CHARGE V, ADULTERY, IN VIOLATION OF ARTICLE 134.

**DISCUSSION**

***Equating MOS trainees to permanent party - grandmothers to toads?[4]***

To establish guilt for violating a lawful general regulation under Article 92, UCMJ, the government must prove each of the following elements beyond a reasonable doubt:

(1) That there was in effect a certain lawful general order or regulation;

(2) That the accused had a duty to obey it; and

(3) That the accused violated or failed to obey the order or regulation.

*Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], Part IV, para. 16.b.(1).

TRADOC Reg. 350-6, para. 2-3(b)(1) states in pertinent part:

> Prohibited relationships. Any relationship between *permanent party*[5] *and IET Soldiers* not required by the

---

[4] WIKIPEDIA, http://en.wikipedia.org/wiki/Apples_and_oranges (a Serbian expression akin to the familiar "apples to oranges" idiom in English) (last visited Dec. 1, 2011).

[5] "Permanent party" is not expressly defined in TRADOC Reg. 350-6, but the Glossary provides the following informative definition:

> **Cadre**
> All military, permanent party members or civilian personnel that command, supervise, instruct, train, or directly support IET Soldiers.

The term "permanent party" is referenced at length in housing regulations and describes those Soldiers assigned on a permanent rather than a temporary basis to an installation. *E.g.*, Army Reg. 210-50, Installations: Housing Management, para. 3-29 (3 Oct. 2005). This accords with our common sense understanding of the words as distinguishing between trainees of any type temporarily at an installation pending completion of their coursework and those Soldiers, such as cadre, who are permanently assigned on orders to such duty station. Appellant was in a temporary duty status (TDY).

> training mission is prohibited IAW AR 600-20, paragraph
> 4-15.  This definition includes and is not limited to dating
> IET Soldiers, writing personal letters/emails, having
> personal telephone conversations unrelated to the training
> mission, playing cards, gambling, dancing, entertaining in
> a personal residences [sic], sharing accommodations in a
> hotel/motel, transporting in a POV, or any other conduct
> of a personal or sexual nature. (Emphasis added).

This regulation was in effect and we assume *arguendo* that appellant transported PV2 ZA in his personal vehicle on September 13, 2008.   But this issue turns on whether appellant as an MOS-T student had a duty to comply with the charged regulation.  We have combed the record of trial and find no mention that appellant was ever considered *permanent party*; indeed the specification explicitly describes appellant as "while in a duty status as a *Military Occupational Specialty Trainee*."[6]

The government maintains, nonetheless, that appellant was subject to TRADOC Reg. 350-6, para. 2-3(b)(1) because another paragraph of the same regulation, para. 3-26(c)(5)(a), states that MOS-T Soldiers' privileges "are the same as those of permanent party members of equal grade."[7]  Without citing us to any authority, the government *ipso facto* argues that privileges of grade equate to status as permanent party, which in this case equates to criminal liability.  We refuse to make such a leap or torture the plain meaning of simple words.  The test for legal sufficiency is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Pabon*, 42 M.J. 404, 405 (C.A.A.F. 1995).  On its face the regulation in question applies only to *permanent party* and we find as a matter of law that appellant's student status did not equate to permanent party status.  Appellant was not subject to the charged regulation and was under no duty to obey

---

[6] A different paragraph of TRADOC Reg. 350-6, para. 3-26.c.(5)(c), specifically addresses the relationship between MOS-T and IET students and forbids certain fraternization between them.  It does not address transporting IET Soldiers in privately owned vehicles.

[7] Privileges are described in TRADOC Reg. 350-6, Table 2-2, as a six-phase progression of less restrictive behaviors for IET/AIT students beginning with total control, restriction to company area and escort by drill sergeant, and culminating in a final phase of freedoms "similar to permanent party." Additionally, para. 3-26(c)(5)(a) further illuminates the meaning of "privileges" for MOS-T Soldiers - "They are treated with the dignity and respect due their grade."

it; the military judge clearly erred as to this essential element. The evidence is legally insufficient and appellant is entitled to have the finding of guilt set aside and the charge dismissed.

*Not every adultery is punishable under the UCMJ.*

Relevant facts established that SPC AJ, a married National Guard Soldier from Minnesota, was attending advanced individual training (AIT) at Fort Huachuca to complete the 35M interrogator school. She was in a different training company from appellant but had met him briefly when introduced to him by another noncommissioned officer at a bar in August 2008. On September 13, 2008, SPC AJ volunteered for an Oktoberfest event at a park off post where she sold beer and bratwurst from a stand. She continued to drink with friends after her shift concluded at 5:00 p.m. Later that evening SPC AJ saw appellant in the company of SPC JT, a male Soldier whom she knew had attended the Defense Language Institute with her husband. She visited with SPC JT for awhile and talked about her husband, but appellant was not part of the conversation. SPC AJ then sought out appellant to dance.

Around 8:00 p.m. appellant loaded up SPC AJ and SPC JT in the back seat of his vehicle and drove them away from the party. Appellant stopped first at a convenience store so that SPC JT could buy some more beer for himself, then dropped SPC JT at his off-post hotel. SPC JT offered to ride further with SPC AJ back to post, but she declined his offer, telling him that she was "fine." Once SPC JT departed, SPC AJ moved up to the front seat with appellant. En route back to post, appellant and SPC AJ stopped in the darkened parking lot of a restaurant and engaged in sexual intercourse in the car. Afterward, appellant dropped SPC AJ off at her barracks.[8]

---

[8] At trial, SPC AJ described the events as follows:

> SPC AJ: We were around the side because I could see all
> the cars and the little patio area. Because I could see all
> the people outside of the Buffalo Wild Wings.
> TC: Were you parked next to other cars?
> SPC AJ: No.
> TC: And what happened in the car?
> SPC AJ: He had sex with me.
> TC: Was there any physical or biological things that let
> you know that sexual intercourse had occurred?
> SPC AJ: Yes, Sir.
> TC: What was that?

(continued . . .)

5

At trial SPC AJ testified that her recollection of events was clouded because of the amount of alcohol she had consumed ("I was in and out") but she always wore her wedding ring, which she held up to display while testifying. She could not recall that she ever told appellant that she was married. Although SPC JT knew that SPC AJ was married, he testified that he never mentioned that fact to appellant. Specialist JT also did not notice whether SPC AJ was wearing a wedding ring.[9] When asked by trial counsel where SPC AJ's husband was "currently" (i.e., at the time of trial in May 2009), SPC JT stated "currently, he is in Iraq." There was no evidence as to the husband's military status or whereabouts in September 2008, the time of the alleged offense.

Appellant argued in his Rule for Courts-Martial 917 motion for a finding of not guilty that the government produced no evidence about prejudice to good order and discipline or service-discrediting conduct. Trial counsel's response was as follows:

> As far as Specification 2, "wrongfully having sexual intercourse with Private [AJ], a married woman not his wife." We heard evidence that her husband is in Iraq. He's a deployed Soldier. Certainly the government would be able to argue that the conduct into [sic] itself is service discrediting, almost per se. It's certainly prejudice [sic] to good order and discipline.

---

(continued . . .)
> SPC AJ: There was ejaculate inside of me after the fact, and it was in my underwear and my pants.
> TC: And what happened after that?
> SPC AJ: After the parking lot?
> TC: Yes, sorry.
> SPC AJ: Then we went back to post and he dropped me off at my barracks.

[9] Appellant testified at trial that he did not know SPC AJ was married. He said that she came up behind him at the Oktoberfest party, put her arms around his waist, and asked him to dance. He admitted that they had sexual intercourse. He never noticed a wedding ring.

Trial counsel repeated this argument in closing with one significant change in tense, contending that adultery "on its face, is prejudicial to good order and discipline, especially in this case, Your Honor.  The husband *was* in Iraq."[10]

To establish guilt for adultery under Article 134, UCMJ, the government must prove each of the following elements beyond a reasonable doubt:

(1) That the accused wrongfully had sexual intercourse with a certain person;

(2) That, at the time, the accused or the other person was married to someone else; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM*, Part IV, para. 62.b.

We review for factual sufficiency de novo.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  Our test is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt."  *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). It is to the prejudice of good order and discipline prong of the third element that we direct our attention.

We discount entirely the government's argument below that SPC AJ's husband was deployed at the time of the adulterous conduct; that is simply a mischaracterization of the evidence.  No evidence was offered as to the husband's whereabouts or his military status in September 2008.  There was no evidence whatsoever produced by the government as to the impact of this adulterous episode on individuals, units or the training mission at Fort Huachuca.  We cannot indulge the government's suggestion that the conduct was presumptively prejudicial as this

---

[10] The military judge evidently gave trial counsel's outside-the-record argument some credence.  In a post-trial Article 39a session before a different military judge convened to address whether the military judge made an inappropriate comment during a "bridge-the-gap" session suggesting that appellant should have been charged with sexual assault, the military judge testified, "He wasn't charged with sexual assault, I didn't find him guilty of sexual assault.  I never sentenced him for sexual assault.  He was charged with adultery with another Soldier. . . . Who was married.  Whose husband was in Iraq."

would violate due process. *See Sandstrom v. Montana*, 442 U.S. 510 (1979) (the presumption of innocence applies to each element of a crime and proof of one element may not conclusively establish proof as to another element).

We are mindful that the scope of adultery under the UCMJ has narrowed over the past decade as a result of the President's Executive Order No. 13,262, 67 F.R. 18773, 18778 (2002); *United States v. Jonsson*, 67 M.J. 624, 626 (C.G. Ct. Crim. App. 2009). "To constitute an offense under the UCMJ, the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting. Adulterous conduct that is directly prejudicial includes conduct that has an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion, or is clearly detrimental to the authority or stature of or respect toward a servicemember." *MCM*, Part IV, ¶ 62.c.(2).

Appellant also raises for the first time on appeal the affirmative defense of mistake of fact as to SPC AJ's marital status although he did assert at trial his lack of knowledge that SPC AJ was married when they engaged in intercourse on the one occasion. Nonetheless we find this defense was raised by the evidence and it became incumbent upon the government to prove beyond a reasonable doubt that the belief was unreasonable or not honest. *MCM*, Part IV, ¶ 62.c.(4). It is evident that no one expressly told appellant that SPC AJ was married, to include SPC AJ herself. She initiated contact with appellant by asking him to dance. When SPC JT offered to escort her back to post, she declined his company, stating that she was fine and she moved to the front seat of appellant's vehicle on her own. Within a few minutes she was having sex with appellant. The government suggests that it is enough that SPC AJ wore a ring on her finger and brandished it at trial, even though there was nothing to suggest that appellant or anyone else saw it the night of September 13, 2008. Finally, the government's contention that appellant should have inquired as to her marital status also fails. No such duty exists under law.

We give due deference to the military judge who assessed the relative credibility of the witnesses, but we also recognize that the military judge mistakenly relied on trial counsel's assertion that SPC AJ's husband was deployed at the time of the ostensible offense. Given the narrowed scope of criminalized adultery, the paucity of any evidence that this instance of adultery was directly prejudicial to good order and discipline, and appellant's reasonable, and non-frivolous assertion of mistake of fact, we are left unconvinced that the government has proven its case beyond a reasonable doubt. Consistent with our responsibility under Article 66(c), UCMJ, to affirm "only such findings as we find correct in law and fact, on the basis

of the entire record, should be approved," we set aside the findings of guilty and order that the charges and specifications be dismissed.[11]

## DECISION

The findings of guilty of Specification 2, Charge III and Specification 2, Charge V are set aside and those charges and specifications are dismissed. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence set aside by this decision are ordered restored.

Senior Judge KERN and Judge YOB concur.

FOR THE COURT:

JOANNE P. TETREAULT ELDRIDGE
Deputy Clerk of Court

---

[11] We recognize that our higher court has recently held that "proof of the conduct itself *may* be sufficient" evidence of the terminal elements in an Article 134 prosecution. *United States v. Phillips*, 70 M.J. 161, 163, 166-67 (C.A.A.F. 2011) (possession of actual child pornography). Because we resolve this case under a factual sufficiency standard pursuant to Article 66(c), UCMJ, we need not confront the tension between a legal sufficiency analysis and the President's Executive Order No. 13,262, expressly narrowing the reach of criminal adultery.