# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

Before
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**MICHAEL L. FREEBERG**
**SERGEANT (E-5), U.S. MARINE CORPS**

**NMCCA 201400172**
**SPECIAL COURT-MARTIAL**

**Sentence Adjudged**: 21 February 2014.
**Military Judge**: LtCol C.J. Thielemann, USMC.
**Convening Authority**: Commanding Officer, Headquarters and Headquarters Squadron, Marine Corps Air Station Miramar, San Diego, CA.
**Staff Judge Advocate's Recommendation**: Capt C.N. Campaso, USMC.
**For Appellant**: CDR Ricardo A. Berry, JAGC, USN.
**For Appellee**: CDR James E. Carsten, JAGC, USN; LT Ian D. MaClean, JAGC, USN.

**30 September 2014**

---
**OPINION OF THE COURT**
---

THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.

PER CURIAM:

At a special court-martial, a military judge found the appellant guilty, pursuant to his pleas, of two specifications of violating a lawful general regulation (fraternization under the U.S. Navy Regulations and possession of drug paraphernalia under

Secretary of the Navy Instruction 5300.23E), one specification of making a false official statement, one specification each of wrongful use and possession of anabolic steroids, and one specification of adultery, in violation of Articles 92, 107, 112a, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, 912a, and 934. The military judge sentenced the appellant to confinement for a period of three months, reduction to pay grade E-1, and a bad-conduct discharge. While the pretrial agreement only required the convening authority suspend all confinement in excess of 75 days, as a matter of clemency, he suspended all confinement in excess of time served as of 20 March 2014.

In his sole assignment of error, the appellant asserts his plea to the adultery specification was improvident because the military judge failed to explain or establish an adequate factual predicate for the crime of adultery as narrowed by the President in his 2002 amendment to the Manual for Courts-Martial. We agree and take corrective action in our decretal paragraph. Arts. 59(a) and 66(c), UCMJ.

## Background

During his plea colloquy with the appellant, the military judge informed the appellant of the elements of the offense of adultery, including the third, or "terminal," element: "that under the circumstances, your conduct was to the prejudice of good order and discipline in the Armed Forces and was of a nature to bring discredit to the Armed Forces." Record at 64. He did not further explain or provide any definitions regarding the third element but instead referred to definitions contained in the Stipulation of Fact and asked if the appellant had any questions about them. The appellant responded he did not.

The Stipulation of Fact provided the following definitions:

Conduct prejudicial to good order and discipline is conduct that causes a reasonably direct and obvious injury to good order and discipline. Service discrediting conduct is conduct that tends to harm the reputation of the service or lower it in public esteem.

. . . .

Not every act of adultery constitutes an offense under the UCMJ. Your conduct must also have been prejudicial to good order and discipline in the armed

2

forces or was of a nature to bring discredit upon the
armed forces.

Prosecution Exhibit 1 at 21 – 22.

In the ensuing plea colloquy, buttressed by the Stipulation
of Fact, the appellant admitted that while he remained legally
married, he engaged in sexual intercourse with Lance Corporal HM,
a woman not his wife.  He stated he got to know Lance Corporal HM
while the two worked in the same shop within the squadron, but did
not begin to date her until she transferred to a different shop.

Some three years prior to this, the appellant and his wife
had decided to separate, and his wife left him in San Diego and
moved to Florida.  The appellant and his wife were mutually aware
that the other had entered into a dating relationship with someone
else.  The appellant affirmed the military judge's question: "So
this was understood between you and your wife that we are
eventually going to be getting divorced, and now that we are
physically separated we are going to go our own separate ways?"
Record at 67.  The wife never reported the appellant's
relationship with Lance Corporal HM to the command and she was not
a Marine herself.

Asked how he thought his adulterous conduct was prejudicial
to good order and discipline, the appellant responded, "I guess
the best I can say is perception is reality.  I'm sure that
somebody that I was working with or somebody at the command, you
know, knew that I was married and the fact that I was having an
affair with a fellow Marine looked badly upon myself and my
credibility."  *Id.* at 68.  The appellant also answered
affirmatively when the military judge asked, "[W]e are held to a
different standard, and by failing to obey the rules – you in
particular failing to obey the rules – no matter what you may
think about it, it would be difficult for you to actually try to
uphold the standards you would expect of maybe your junior
Marines; correct?"  *Id.* at 69.

Asked how the appellant's conduct was of a nature to bring
discredit upon the armed forces, he replied "because it gives us a
bad name.  It says, hey, you know, these guys are married.  To the
public's eye we may be happily married, but they might not know
all the details and that we are, you know, having an actual
marital affair against our spouse.  I mean, that can look bad in
the public's eyes."  *Id.*  The appellant stated he was not aware if
other people knew he and Lance Corporal HM were seeing each other—

—that they were trying to be discreet about it——"but it's entirely possible."  *Id*. at 70.

The appellant stated he was never told to stop seeing Lance Corporal HM, although Master Sergeant S, testifying as a Defense sentencing witness, stated he had "heard through scuttlebutt" that the appellant and Lance Corporal HM may have been dating one another and that "[t]he Marines and I had addressed it with [the appellant]."  *Id*. at 115.

**Analysis**

A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion.  *United States v. Inabinette,* 66 M.J. 320, 322 (C.A.A.F. 2008).  An appellate court will set aside a decision to accept a guilty plea only where it finds a substantial basis in law or fact for questioning the plea.  *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007).  The record must contain a sufficient factual basis to support a guilty plea. *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969); RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). Furthermore, the record must indicate not only "the accused's understanding and recitation of the factual history of the crime, but also an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citation omitted).  "An essential aspect of informing [an accused] of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004) (citations omitted).

The elements of adultery are: (1) that the accused wrongfully had sexual intercourse with a certain person; (2) that at the time, the accused or the other person was married to someone else; and (3) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.  MANUAL FOR COURTS-MARTIAL, UNITED STATES, (2012 ed.), Part IV, ¶ 62b.

While the military judge correctly listed the above elements, this case turns on whether he erred by failing to instruct on and elicit an adequate factual predicate regarding the President's explanation of those elements found in paragraph 62c of the Manual.  We find he did so err.

4

Prior to 2002, the MCM explanation of the terminal element of adultery—that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces—defaulted to the general explanation applicable to all offenses under Article 134. MCM (2000 ed.), Part IV, ¶¶ 60c and 62c. Thus, as with other Article 134 offenses, "to the prejudice of good order and discipline" referred "only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense[,]" *id.* at ¶ 60 c(2)(a), while "of a nature to bring discredit upon the armed forces" was "conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem[,]" *id*. at ¶ 60c(3).

In 2002, the President issued Executive Order 13,262, 67 F.R. 18773, 18778 (2002), amending the MCM to create a separate explanation of the terminal element unique to adultery offenses. *See United States v. Jonsson*, 67 M.J. 624 (C.G.C.C.A. 2009). Since then, the MCM provides, "To constitute an offense under the UCMJ, the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting. Adulterous conduct that is directly prejudicial to good order and discipline includes conduct that has an obvious, and measurably divisive effect on unit or organization discipline, morale, or cohesion, or is clearly detrimental to the authority or stature of or respect toward a servicemember." MCM (2012 ed.), Part IV, ¶ 62c(2). "Discredit means to injure the reputation of the armed forces and includes adulterous conduct that has a tendency, because of its open or notorious nature, to bring the service into disrepute, make it subject to public ridicule, or lower it in public esteem." *Id.* The explanation then goes on to provide a non-exhaustive list of factors to consider when determining whether adulterous acts are prejudicial to good order and discipline or service discrediting.

This new explanation operated to narrow the scope of adultery as an offense under the UCMJ.[1] *Jonsson*, 67 M.J. at 626. The

_____

[1] The Government does not challenge the authority of the President to narrow the scope of an offense under Article 134 in this manner; nor do we have cause to do so here. *See generally*, *United States v. Zachary*, 61 M.J. 813, 818 (Army Ct.Crim.App. 2005), *aff'd* 63 M.J. 438 (C.A.A.F. 2006) (When the President has enumerated Article 134 offenses in Part IV of the MCM, "courts have generally accepted the President's explanation of these elements as defining what is required to obtain a conviction for a specified offense under Article 134, UCMJ." (footnote omitted)); *United States v. Zachary*, 63 M.J. 438 (C.A.A.F. 2006) ("In analyzing offenses charged under the general article, Article 134, UCMJ, we look at both the statute and the President's explanation in MCM pt. IV

military judge thus had a duty to ensure the appellant understood the meaning of "prejudice to good order and discipline" and "conduct of a nature to bring discredit upon the armed forces" not only in a generic Article 134 sense, but in the narrower sense defined by the President specifically for the offense of adultery.

The military judge erred in this case by failing to do so.[2] The record is devoid of any indication the appellant was aware of the definition of "directly prejudicial" as "including conduct that has an obvious, *and measurably divisive* effect on unit or organization discipline, morale, or cohesion, or is *clearly detrimental* to the authority or stature of or respect toward a servicemember" or the definition of "discredit upon the armed forces" as including "adulterous conduct that has a tendency, *because of its open and notorious nature*, to bring the service into disrepute, make it subject to public ridicule, or lower it in public esteem."  MCM (2012 ed.), Part IV, ¶ 62c(2)(emphasis added).

This does not necessarily end our inquiry.  Even when a court finds error in advising an accused, it may still find the guilty plea provident if, considering the record as a whole, there are factual circumstances that objectively support the plea.  *Negron*, 60 M.J. at 141.  We do not find such circumstances in this record. While the military judge probed to determine whether the appellant's adulterous conduct was prejudicial to good order and discipline or service discrediting in a broader, pre-2002 sense, nothing in the record objectively supports that the appellant believed or admitted his conduct met the more exacting standard articulated in the post-2002 MCM.

---

[] to determine the elements of the offense."); *United States v. Jones*, 68 M.J. 465, 472 (C.A.A.F. 2010) (citing *Parker v. Levy*, 417 U.S. 733, 753-56 (1974)) (While holding that Presidentially-listed lesser included offenses are not binding on courts, noted that "Presidential narrowing of the 'general' article through examples of how it may be violated" is a different question and "is part of why Article 134, UCMJ, is not unconstitutionally vague.").  *But see*, *United States v. Fosler*, 70 M.J. 225, 231 (C.A.A.F. 2011)) (holding that sample adultery specification in Part IV of the MCM was hortatory vice authoritative and noting that "the President does not have the authority to decide questions of substantive criminal law.") (citations omitted)).

[2] We note that while perhaps not all providence guides have been updated, the providence inquiry recommended in the 2012 Military Judges' Benchbook, DA Pamphlet 27-9, § 3-62-1, includes the definitions and instructions we find missing here.  Contrary to the appellee's position, both "conduct prejudicial to good order and discipline" and "service discrediting conduct" were, by virtue of being charged and pled to, "in issue," Appellee's Answer of 29 Aug 2014 at 10–11, and thus should have been fully explained.

Accordingly, we find the military judge abused his discretion in accepting the plea of guilty to the adultery specification and will take corrective action in our decretal paragraph.

## Sentence Reassessment

We next determine whether we can reassess the sentence in accordance with the principles set forth in *United States v. Moffeit,* 63 M.J. 40 (C.A.A.F. 2006), *United States v. Cook,* 48 M.J. 434 (C.A.A.F. 1998), and *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986). We are satisfied that the sentencing landscape in this case has not changed dramatically as a result of our decision to set aside the finding of guilty to the adultery specification. *See United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006). We conclude that the adjudged sentence for the remaining offenses would have been at least the same as that adjudged by the military judge and approved by the convening authority.

## Conclusion

The findings of guilty to Charge V and to Specification 3 thereunder are set aside and that Charge and Specification are dismissed. We affirm the remaining findings and the sentence as approved by the convening authority.

For the Court


R.H. TROIDL
Clerk of Court

7