IN THE CASE OF

UNITED STATES, Appellee

v.

Wesley B. NEGRON, Corporal
U.S. Marine Corps, Appellant

No. 03-0651

Crim. App. No. 200100844

United States Court of Appeals for the Armed Forces

Argued April 21, 2004

Decided July 29, 2004

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., EFFRON, BAKER and ERDMANN, JJ., joined.

Counsel

For Appellant:  Commander Michael J. Wentworth, JAGC, USNR
(argued); Lieutenant Colonel Eric B. Stone, USMC (on brief);
Lieutenant Commander E. J. McDonald, JAGC, USN.

For Appellee:  Lieutenant Christopher J. Hajec, JAGC, USNR
(argued); Commander R. P. Taishoff, JAGC, USN, (on brief);
Lieutenant Frank L. Gatto, JAGC, USNR.

Military Judge:  T. L. Miller

**This opinion is subject to editorial correction before final publication**.

United States v. Negron, No. 03-0651/MC

Judge GIERKE delivered the opinion of the Court.

Our review of this case relates only to Appellant's guilty plea to depositing obscene matter in the mail. In the providency inquiry, the military judge erroneously gave the definition of "obscene" relating to indecent acts to define the "obscene" language that renders this offense punishable. The principal issue before this Court is whether the military judge's use of this erroneous definition of "obscene" and his questioning of the Appellant using primarily leading questions about this offense were deficient, thereby rendering Appellant's plea improvident.

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of one specification of wrongful appropriation, one specification of making and uttering a worthless check, and one specification of the offense at issue in this appeal, in violation of Articles 121 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 921 and 934 (2000), respectively. The adjudged sentence provides for a bad-conduct discharge, reduction to the lowest enlisted grade, total forfeitures, and confinement for 18 months. The convening authority approved the sentence, but suspended confinement in excess of 12 months in accordance with the pretrial agreement.

United States v. Negron, No. 03-0651/MC

In its original decision, the Court of Criminal Appeals set aside the conviction of depositing obscene matter in the mail, reassessed and modified the sentence. United States v. Negron, NMCM No. 200100844, slip op. (N-M. Ct. Crim. App. March 14, 2002). On reconsideration, en banc, the court vacated the original decision and affirmed the findings and sentence. United States v. Negron, 58 M.J. 834 (N-M. Ct. Crim. App. 2003). But the lower court was divided. In addition to the lead opinion, there were three separate opinions reflecting various concurring or dissenting views of several other judges.

This Court granted review of the following issues:

I.  WHETHER THE LOWER COURT ERRED IN AFFIRMING APPELLANT'S PLEA OF GUILTY TO DEPOSITING OBSCENE MATTERS IN THE MAIL WHERE THE RECORD DISCLOSES A SUBSTANTIAL BASIS FOR QUESTIONING THAT PLEA.

II. WHETHER THE LOWER COURT ERRED IN HOLDING THAT APPELLANT'S PLEA OF GUILTY TO DEPOSITING OBSCENE MATTERS IN THE MAIL WOULD SUSTAIN A CONVICTION FOR SERVICE DISCREDITING CONDUCT UNDER ARTICLE 134(2), UCMJ.

For the reasons set forth below we reverse the decision of the Court of Criminal Appeals. We hold Appellant's guilty plea improvident to the offense of depositing obscene matter in the mail and set aside Appellant's conviction of this offense.

FACTS

Working overseas as a postal clerk, Appellant wrongfully took $1,540.00 cash from the postal safe and used it for personal spending. On another occasion, Appellant wrote a check

for $500.00 on his account at the Marine Federal Credit Union (Credit Union), but later withdrew funds from that account thereby causing the prior check to be dishonored when it was presented for payment.

In an attempt to obtain funds to replenish his checking account, Appellant applied for a loan from the same Credit Union, but his request was denied.  After reading the letter informing him that his loan application was rejected, Appellant immediately wrote a letter to the Credit Union and placed it in the United States mail system.  Appellant's letter contained this language:

> Oh, yeah, by the way y'all can kiss my ass too!!
> Worthless bastards!  I hope y'all rot in hell you
> scumbags.  Maybe when I get back to the states, I'll
> walk in your bank and apply for a blowjob, a nice dick
> sucking, I bet y'all are good at that, right?

Facing several charges arising from his offenses, Appellant negotiated a pretrial agreement.  Consistent with this agreement, Appellant pleaded guilty to several offenses including the offense of depositing obscene matter in the mail.  For purposes of this appeal, we focus on the providency inquiry relating to this single offense.

Initially, the judge advised Appellant of the elements of this offense including: that Appellant deposited in the United States mail a letter with the previously identified language, that he did this wrongfully and knowingly, that

4

the matter deposited was obscene, and that his conduct was to the prejudice of good order and discipline in the armed forces or was of such a nature to bring discredit upon the armed forces. As to the definition of obscene, the military judge stated:

> The term "obscene" as referred to in the specification refers to that form of immorality relating to sexual impurity with (sic) is not only grossly vulgar and repugnant to common society, but which tends to excite lust and deprave the morals with respect to sexual relations.

> The matter must violate community standards of decency or obscenity and must go beyond customary limits of expression. The [community's] standards of decency or obscenity are to be judged according to the average person in the military community as a whole rather than the most prudish or [tolerant].

> Proof that you believe the matter to be obscene is not required. It is sufficient, however, if you knew the contents of the matter at the time of the depositing.

Later during the providency inquiry, the judge engaged Appellant in a dialogue as to the factual basis for the guilty plea. The relevant discussion of this offense follows:

MJ: Let's look at this last Additional Charge, supporting specification of Additional Charge II. On 10 April 2000 in Okinawa, Japan, did you deposit or cause to be deposited a letter in the United States mail?

ACC: Yes, sir.

MJ: Now, who wrote that letter?

ACC: I did, sir.

. . . .

MJ: Now, did you deposit the letter for mailing in the United States mails and for mailing and delivery to the Marine Corps Federal Credit Union?

ACC: Yes, sir.

MJ: Did the letter you deposited on 10 April, year 2000, contain language to this effect: "Oh yeah, by the way y'all can kiss my ass too!! Worthless bastards! I hope y'all rot in hell, you scumbags. Maybe when I get back to the states, I'll walk in your bank and apply for a blowjob. A nice dick sucking. I bet y'all are good at that; right," or words to that effect?

ACC: Yes, sir.

MJ: Now, did you write that language on the letter?

ACC: Yes, sir.

MJ: Did you know the letter contained that language when you deposited it in the mail?

ACC: Yes, sir.

MJ: Did anyone force you to write that letter or deposit it in the mail?

ACC: No, sir.

MJ: Was the writing and depositing -- was [writing] and depositing that letter in the mail the result of a freely-made decision on your part?

ACC: Yes, sir.

MJ: Do you believe you knowingly and wrongfully deposited that letter in the mail?

ACC: [No response].

MJ:  I'll repeat that question for you.  Do you believe that you knowingly and wrongfully deposited that letter in the mail?

ACC: Yes, sir.

MJ:  Now, was the letter deposited on 10 April to the Marine Corps Federal Credit Union?

ACC: Yes, sir.

MJ:  Did you write that letter in response to a problem you were having with the Marine Corps Federal Credit Union?

ACC: Yes, sir.

MJ:  What was the problem?

ACC: Well, sir, I was trying to solve this problem, sir, by getting a loan from them, and I felt like that was my last way out of the situation that I was in, sir.  And when they denied it, that's when I -- that frustrated me, sir, and that's what caused me the write the letter, sir.

.  .  .  .

MJ:  Did you know anyone there that you sent it to?

ACC: No, sir.  I didn't attention it to anybody.

MJ:  Do you feel that this was a joke?

ACC: No, sir.

MJ:  Did you feel that this was funny or obscene?

ACC: No, sir.  It was obscene, sir, but it wasn't funny.

MJ:  Do you think that this letter would probably offend the people there at the Marine Corps Federal Credit Union?

ACC: Yes, sir.

MJ:  Now, I -- these words that I'm going to use. Corporal Negron, are not intended to embarrass you.  They are just -- I have to make clear in my mind that you are, in fact, guilty of this offense.  Now, the words, "kiss my ass"

7

might mean that you wanted someone at the Marine Corps Federal Credit Union to kiss your rear end.  Is that what you intended to convey to the reader?

ACC: No, sir.  I was just angry and I intended to offend them and get back at them for denying me.

MJ:  Okay.  Did you intend to convey to them the message though that somebody there at the Marine Corps Federal Credit Union could kiss your rear end?

ACC: Yes, sir.

MJ:  Now, a "bastard" might define someone of illegitimate birth.  Were you describing someone of illegitimate birth in your letter?

ACC: No, sir.

MJ:  What did you mean by the word "bastard"?  You might want to discuss that with Major Woodworth.

*The accused conferred, with his defense counsel.*

ACC: I wasn't paying so much attention to the technical definition of what it was, sir, I just threw the word out to offend them.

MJ:  All right.  Well, a "bastard" might be somebody of illegitimate birth or it might mean somebody that is just a mean or despicable person.

ACC: Yes, sir.

MJ:  Were you just trying to describe somebody that was a mean or despicable person?

ACC: Yes, sir.

MJ:  All right.  Now, a "blowjob" and "dick sucking" as referred to in the language are slang terms for sodomy.  Do you understand that?

ACC: Yes, sir.

8

MJ:  Now, "sodomy" means for a person to take into that person's mouth the sexual organ of another person.  Now, is that the message that you were trying to convey?

ACC: Yes, sir.

MJ:  Okay.  So was the message that you were trying to convey to the Marine Corps Federal Credit Union that they were mean people who could kiss your rear end and commit sodomy on you?

ACC: Yes, sir.

MJ:  Do you believe and admit that the depositing of the letter referred to in the specification was done wrongfully and knowingly?

ACC: Yes, sir.

MJ:  Now, let me define for you again the term "obscene". [The judge repeats the definition he stated earlier.]

. . . .

Do you believe and admit, Corporal Negron, that the language you used in this letter was obscene?

ACC: Yes, sir.

MJ:  Do you believe and admit that this language used in your letter was calculated to corrupt morals or excite lustful thoughts?

ACC: Yes, sir.

MJ:  Now, on 10 April when you deposited that letter, was your conduct substantially prejudicial to the good order and discipline in the armed forces?

ACC: Yes, sir.

MJ:  Do you believe also that your conduct was of a nature to bring discredit upon the armed forces?

ACC: Yes, sir.

MJ:  Do you believe that members of the Marine Corps Federal Credit Union who read your letter would look down

on the United States Marine Corps for writing this grossly vulgar and obscene matter?

ACC: Yes, sir.

MJ:  Do you believe they were grossly offended by your letters?

ACC: Yes, sir.

Based on his questions and Appellant's responses, the military judge found Appellant's guilty plea to this offense provident, with a factual basis, and accepted it as well as Appellant's guilty pleas to other offenses.

On appeal at the lower court and before this Court, Appellant argues that the language in the letter he sent to the Credit Union was not obscene.  Appellant claims that he was angry that his loan application was denied and that the letter "was not calculated to corrupt morals or excite libidinous thoughts."  Appellant also claims that his answers throughout the providency inquiry were in response to leading questions posed by the military judge and failed to establish a factual basis to support the guilty plea to this offense.

The Government argues, in general, that Appellant's plea is provident because Appellant admitted facts to establish every element of the offense and, in particular, that Appellant's responses establish his language was obscene as the purpose of Appellant's letter to the Credit Union was to offend its employees "by means of a graphic description of a deviant sexual

10

act." Before this Court, the Government acknowledges the test of obscene language stated by this Court in United States v. French, 31 M.J. 57 (C.M.A. 1990), and applied in United States v. Brinson, 49 M.J. 360 (C.A.A.F. 1998). However, the Government claims that these cases do not present the complete test for obscene and indecent language. And the Government joins the lower court in requesting this court to reevaluate Brinson and to overrule its definition of "obscene" as it is inconsistent with the definition stated by the President in Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM], Part IV, para. 89.c.

In its original decision, a divided lower court found that Appellant's plea was improvident because the language used in the letter was not "calculated to corrupt morals or excite libidinous thoughts" as required by French and Brinson. Almost 16 months later a divided en banc court vacated its earlier decision. Six of the judges affirmed Appellant's conviction for depositing obscene matter in the mail, two of the judges voted to affirm a lesser-included offense of service discrediting conduct under Article 134(2), UCMJ, and one judge would neither affirm the conviction for depositing obscene matter in the mail nor the lesser-included offense.

DISCUSSION

Depositing obscene matter in the mail is not specifically enumerated in the Code as a criminal offense, but it is punishable under Article 134, UCMJ; See MCM, Part IV, para. 94.b.  This provision of the MCM states that the elements for this offense are:

> (1)  That the accused deposited or caused to be deposited in the mails certain matter for mailing and delivery;
> (2)  That the act was done wrongfully and knowingly;
> (3)  That the matter was obscene; and
> (4)  That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

From this provision and its explanation, it is clear that the focus of this offense is on "obscene" words.  The explanation states:  "Whether something is obscene is a question of fact.  'Obscene' is synonymous with 'indecent' as the latter is defined in paragraph 89.c.  The matter must violate community standards of decency or obscenity and must go beyond customary limits of expression."

Paragraph 89.b of Part IV of the MCM states the elements for the charge of orally or in writing communicating to another person indecent language.  Because its definition of "indecent" is synonymous with "obscene" in paragraph 94.c, it is this precise language that is the focus of our attention.  Paragraph 89.c states:

> "Indecent" language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought.  Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts.  The language must violate community standards.

Addressing the scope of this provision in Brinson, this Court stated that "[w]hen the Government makes speech a crime, the judges on appeal must use an exacting ruler."  49 M.J. at 361.  This Court also embraced the narrow French test to determine if language is indecent, that is, "whether the particular language is calculated to corrupt the morals or excite libidinous thoughts."  Id. at 364 (quoting French, 31 M.J. at 60).  That opinion further explained that calculated means "intended" or "planned."  Id.  Finally, the Court reaffirmed that language must be evaluated in the "precise circumstances under which the charged language was communicated."  Id.

In Brinson, this Court applied this test to circumstances where Appellant had used gross, vulgar, and profane language in an outrageous reaction to police officers performing their legitimate duties.  This Court found that the evidence did not support a conviction of communicating indecent language because the language Appellant used "was clearly calculated or intended to express his rage, not any sexual desire or moral dissolution."  Id.

13

There was a dissent in Brinson pointing out that MCM, Part IV, paragraph 89.c, "provides for at least two definitions of 'indecent language,' either of which can be the basis for a conviction." Brinson, 49 M.J. at 368 (Crawford, J., joined by Gierke, J., dissenting in part and concurring in the result). The dissent stated the second definition of 'indecent language' found in paragraph 89.c "provides that indecent language includes language that is 'grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought.'" Id. Accordingly, the dissent would have found that Appellant's language in Brinson would fit within this second definition of "indecent language."

Notwithstanding the disagreement in Brinson, the majority view stated the law defining obscene matter at the time of Appellant's court-marital. The clear and unequivocal holding of Brinson was that only language "calculated to corrupt morals or excite libidinous thoughts" was obscene. See French, 31 M.J. at 60.

As Appellant proferred a guilty plea, the military judge had the duty to apply this precedent, that is, to accurately inform Appellant of the nature of his offense and elicit from him a factual basis to support his plea. See United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969). An essential aspect

of informing Appellant of the nature of the offense is a correct definition of legal concepts.  The judge's failure to do so may render the plea improvident.  See United States v. O'Connor, 58 M.J. 450, 453 (C.A.A.F. 2003)(holding plea improvident due to erroneous definition of child pornography); United States v. Pretlow, 13 M.J. 85, 88-89 (C.M.A. 1982)(holding plea improvident where a military judge failed to define the substantive elements of conspiracy to commit robbery, a complex offense).

But such an error in advising an accused does not always render a guilty plea improvident.  Where the record contains "factual circumstances" that "objectively support" the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted.  See United States v. James, 55 M.J. 297, 300 (C.A.A.F. 2001); United States v. Shearer, 44 M.J. 330, 334 (C.A.A.F. 1996).  We have stated that in evaluating the providency of a plea, the entire record should be considered. See United States v. Jordan, 57 M.J. 236, 238-39 (C.A.A.F. 2002).  To prevail, Appellant has the burden to demonstrate a "substantial basis in law and fact for questioning the guilty plea."  United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).

In the present case, the providency inquiry was deficient because the military judge used an erroneous definition of "obscene."  The judge's definition of obscene is in large part

15

taken from the definition of "indecent" in the Article 134 offense of indecent actions with another. The explanation of this offense states, "'Indecent' signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations." MCM, Part IV, para. 90.c. The military judge possibly attempted to blend the language from this paragraph with the language from MCM, Part IV, para. 94.c as he added the requirement that the language "must violate community standards." Regarding this blended definition of obscene language, six of the judges agreed in noting the following:

> In providing this definition, the military judge gave the definition of "obscene" contained in the then current Military Judges' Bench book for use with the offense of depositing obscene matter in the mail. . . . [T]he shadow of this pronouncement of what is "obscene" adequately covers both the definition provided in MCM, Part IV, ¶89.c and the test for obscenity adopted by our superior Court in French and reaffirmed and expanded somewhat in Brinson.

58 M.J. at 840-41 (footnotes omitted).

We reject the lower court's reasoning that the "shadow" of the definition of indecent acts "adequately covers" the definition of what is "obscene" language. Where speech is an alleged crime, judges must evaluate the speech using the definition provided by the President and not a "shadow." See Brinson, 49 M.J. at 261. Many of the same root words appear in both the definition of "indecent language" and "indecent acts,"

such as, "grossly," "propriety," "vulgar," and "lust." But sharing common words does not render the definitions fungible.

The President elected to punish under Article 134, UCMJ, the separate offenses of indecent acts and indecent language. The President also used different definitions of "indecent" as to each offense. Compare MCM, Part IV, para. 89.c with para. 90.c. We will use the definition the President has provided for each offense and scrutinize any attempt to substitute one for the other.

The linchpin of this case is the judge's erroneous use of the definition of "indecent acts" to evaluate Appellant's alleged "indecent language." In light of this fundamental definitional error, had the military judge conducted an otherwise perfect providency colloquy with Appellant, Appellant's plea to the charged offense would still have been improvident. Appellant simply could not have providently pleaded guilty to a charged offense of placing obscene material in the mail when the military judge used the substantively different definition of indecent found in MCM, Part IV, para. 90.c.

Moreover, this definitional error by the military judge tainted the entire providency inquiry pertaining to the charge at issue. It induced him to focus the providency inquiry on the indecent nature of the acts that were the subject of Appellant's

17

language rather than Appellant's "planned" and "intended" result from use of his language. Id. at 364. Because of this error, the military judge failed to establish a factual basis for Appellant's guilty plea. Often unable to get narrative responses from Appellant that would establish the facts supporting Appellant's guilty plea, the military judge almost exclusively resorted to leading questions and elicited merely a "yes" or "no" response from the Appellant.

In the providency inquiry Appellant stated that he wrote the letter because he was "frustrated" and "angry." Appellant repeatedly stated that his intention was to "offend" the reader of his letter. But Appellant never stated that he planned or intended to engage in or to solicit sexual acts. Similarly, Appellant never stated that he intended to excite libidinous thoughts in the reader of his letter. To the contrary, when the military judge asked what he intended in using the words "kiss my ass," Appellant denied that he wanted someone to actually "kiss [his] rear end." Appellant also admitted using slang words for sodomy, but again he never stated that he sought to engage in these sexual acts or intended to invite the reader of his letter to actually perform them. Appellant explained his choice of words by informing the judge, "I wasn't paying so much attention to the technical definition of what it was, sir, I just threw the word out to offend them." These statements by

Appellant belie any assertion that Appellant "planned" or "intended" his language to incite lustful or libidinous thought.

In response to one leading question, Appellant merely stated, "Yes" when the military judge asked him if he was trying to convey the message that "they [unidentified Credit Union employees who denied his loan] were mean people who could kiss your rear end and commit sodomy on you[.]" Appellant also merely answered "Yes" to the leading question whether his language "was calculated to corrupt morals or excite lustful thoughts[.]" We view the military judge's inquiry as establishing only that Appellant used certain words that related to sexual acts. The military judge failed to have Appellant present any facts that explain how the Appellant's language "was calculated to corrupt morals or excite lustful thoughts." Here, just as in Brinson, the facts establish only that an angry and frustrated servicemember resorted to using improper language to express his feelings. Under the narrow definition of indecent language applied in Brinson, Appellant's language was not obscene.

We have repeatedly advised against and cautioned judges regarding the use of conclusions and leading questions that merely extract from the Appellant "yes" and "no" responses during the providency inquiry. See Jordan, 57 M.J. at 238; United States v. Sweet, 42 M.J. 183, 185 (C.M.A. 1995); United

19

States v. Lee, 16 M.J. 278, 282 (C.M.A. 1983). We have stated, "[I]t is especially important that the accused speak freely so that a factual basis will be clearly established in the record." United States v. Holt, 27 M.J. 57, 58 (C.M.A. 1988). But here the military judge did not follow this direction. The questioning method of the military judge in the present case led the lower court to comment that Appellant's answers "consist primarily of: 'Yes, sir[.]'" 58 M.J. at 839. We agree but come to a different conclusion as to the impact of this form of leading questioning. We find this providency inquiry fatally deficient as a classic example of questioning that extracts little relevant factual information from an accused to establish his offense and to support the guilty plea. We find little benefit in establishing a factual record where as here Appellant merely is "parroting" responses to leading questions asked by the military judge. Here we find Appellant's guilty plea to the Article 134 offense of depositing obscene mail matter improvident.

Our consideration of this case does not terminate here. We return to Brinson to ensure that justice is done both in this case and in the future.

Although this Court in Brinson found that "coarse language" and the "scurrilous public denunciation" of a law enforcement officer was not indecent language, we also observed that the

charged offense "necessarily includes an allegation of a simple military disorder." 49 M.J. at 364. So the Court concluded that the evidence was sufficient to establish the offense of disorderly conduct. Id. at 365. Consistent with this reasoning, we must consider if Appellant's conduct of depositing this particular matter also "necessarily includes an allegation of a simple military disorder." See United States v. Felty, 12 M.J. 438, 442 (C.M.A. 1982); United States v. Epps, 25 M.J. 319 (C.M.A. 1987). The elements of a simple military disorder are that the accused was disorderly at some place and that under the circumstances the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." MCM, Part IV, para. 73.b.

We eschew the opportunity to resolve the issue of whether there was disorderly conduct or any other lesser included offense for four reasons. First, we observe that state courts are divided on the issue of whether the mailing of a vile, profane, or offensive letter is disorderly conduct. Cf. State v. Schwebke, 644 N.W.2d 666 (Wis. 2002)(holding that an anonymous private harassment mailing is punishable under a disorderly conduct statute) with People v. Ohneth, 89 N.E.2d 433 (Ill. App. Ct. 1949)(concluding that the writing of a vile letter and mailing it without other evidence of violent,

boisterous, turbulent or other act of a public nature was not disorderly conduct).  Second, the President in the MCM has explicitly defined the term "disorderly."  MCM, Part IV, para. 73.c.2.  Whether Appellant's conduct is "disorderly" under this definition is an issue that the parties have not addressed before this court.  Third, the deficiencies in the providency inquiry previously discussed (including extracting little relevant factual information and often mere conclusions) give us pause in affirming any lesser included offense.  Finally, the normal remedy for finding a plea improvident is to set aside the finding based upon the improvident plea of guilty and to authorize a rehearing at which the accused is permitted to plead anew.  See United States v. Williams, 53 M.J. 293 (C.A.A.F. 2000); United States v. Marsh, 15 M.J. 252 (C.M.A. 1983).  This remedy restores the appellant to his position before proferring the guilty plea and permits the Government the opportunity to prove the charged offense or any lesser included offense.  In light of all these circumstances, we conclude that authorizing a rehearing is appropriate here.

Issue II in this case questions whether Appellant's conduct was service discrediting conduct.  In light of our disposition of this case, we need not address this issue.

One final matter invites further attention.  Because a rehearing is authorized, it is necessary that we also address

22

United States v. Negron, No. 03-0651/MC

the confusion, apparent in this case, perhaps arising from this Court's decision in Brinson, regarding the definition of "indecent" applicable to charges of indecent language. The President in Part IV of the MCM has provided that the use of certain expressly defined language is punishable for the offenses of indecent language and depositing obscene matter in the mail. MCM, Part IV, para. 89.c, provides two alternate definitions of "indecent language." The use of the disjunctive in this paragraph makes clear that either definition of indecent language may be the legal authority for a conviction. In addition to criminalizing language that is grossly offensive because of "its tendency to incite lustful thought," the President made punishable indecent language that "is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature." Simply stated, paragraph 89.c presents two different definitions to measure speech that may be a crime, dependent on the context in which it is spoken. We adopt and will apply this plain language of the Manual prospectively to cases tried after the date of this decision. See United States v. Moore, 28 M.J. 366, 367 (C.M.A. 1989)(stating new per se rule against Government's use of peremptory challenges to excuse members of accused's own race applies prospectively only); United States v. Crowley, 7

United States v. Negron, No. 03-0651/MC

M.J. 336 (C.M.A. 1979)(applying rule establishing standards for plea bargain inquiries prospectively).

To render language punishable for the offenses of indecent language and depositing obscene matter in the mail, the President has required that the language and conduct of the accused "was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces." MCM, Part IV, paras. 89.b.3 and 94.b.4. In part, it is this element of these offenses that filters out from punishment language that is colloquial vocabulary and may be routinely used by service members. As these offenses touch on First Amendment free speech issues, the Government must always exercise care in both charging and proving these offenses to establish that the factual predicate for these offense is within the ambit of the "narrowly limited classes of [punishable] speech." See Chaplinsky v. New Hampshire, 315 U.S. 568, 571 (1942). See also O'Connor, 58 M.J. at 455.


DECISION

The decision of the United States Navy-Marine Court of Criminal Appeals as to Additional Charge II and its single specification is reversed. The decision as to the remaining Charges and their specifications is affirmed. The findings of guilty to Additional Charge II and its single specification and

24

the sentence are set aside.  The record is returned to the Judge Advocate General of the Navy.  A rehearing is authorized.  If a rehearing is deemed impracticable, the dismissal of Additional Charge II and a reassessment as to sentence alone may be ordered.