# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, ALDYKIEWICZ, and MARTIN
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class JUSTIN H. ADAIR**
**United States Army, Appellant**

ARMY 20100933

Headquarters, 3d Infantry Division and Fort Stewart
Tiernan P. Dolan, Military Judge
Lieutenant Colonel Shane E. Bartee, Staff Judge Advocate (pretrial)
Colonel Jonathan C. Guden, Staff Judge Advocate (post-trial)

For Appellant:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain John L. Schriver, JA (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Major Katherine S. Gowel, JA; Captain T. Campbell Warner, JA (on brief).

28 August 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of knowingly and wrongfully possessing two (2) images of child pornography and one specification of knowingly and wrongfully possessing forty-one (41) images of obscene virtual child pornography, both specifications alleging conduct of a nature to bring discredit upon the Armed Forces, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ].  The court sentenced appellant to a bad-conduct discharge, confinement for fifteen months, and reduction to the grade of E-1.  Pursuant to a pretrial agreement, the convening authority approved the sentence as adjudged with exception of the confinement, approving only six months of confinement.  The convening authority also credited appellant with two days of confinement against the sentence to confinement.

Appellant's case is now before this court for review under Article 66, UCMJ. On appeal appellant raises two assignments of error. First, appellant argues that the sentence must be set aside "because the military judge determined the sentence based on the incorrect maximum punishment in light of *United States v. Beaty*, 70 M.J. 39 (C.A.A.F. 2011)." Second, appellant argues that his guilty plea for Specification 2 is improvident because the military judge "never elicited facts establishing a direct and palpable connection between the military mission and possession of virtual images." As discussed below, the military judge erred in accepting appellant's plea to knowingly and wrongfully possessing forty-one (41) images of "obscene virtual images." Our resolution of appellant's second assignment of error moots appellant's first assignment of error. Appropriate relief is provided in our decretal paragraph.

## BACKGROUND

In December 2009, appellant's spouse, while looking for a picture on appellant's personal computer, discovered child pornography. After confronting appellant about her discovery, she notified appellant's chain of command who in turn notified members of the Army's Criminal Investigation Command. A criminal investigation was opened, which included the seizure and forensic examination of appellant's computer. Upon examination, two (2) images of actual child pornography and forty-one (41) images of virtual child pornography were discovered, images forming the basis of Specifications 1 and 2 of The Charge respectively.

The issue before this court is the providence[1] of appellant's plea to knowing and wrongful possession of "obscene virtual images" of child pornography (Specification 2 of The Charge). The specification at issue reads:

---

[1] The specific error assigned by appellant on appeal reads:

> WHETHER THERE IS A SUBSTANTIAL BASIS IN LAW AND FACT TO QUESTION APPELLANT'S PLEA TO SPECIFICATION 2 OF THE CHARGE WHERE DURING APPELLANT'S GUILTY PLEA THE MILITARY JUDGE NEVER ELICITED FACTS ESTABLISHING A DIRECT AND PALPABLE CONNECTION BETWEEN THE MILITARY MISSION AND POSSESSION OF VIRTUAL IMAGES.

SPECIFICATION 2: In that Private First Class (E-3) Justin Adair, US Army, did, between on or about 15 January 2009 and on or about 8 December 2009, at or near Fort Stewart, Georgia, knowingly and wrongfully possess forty one (41) obscene virtual images, including hand drawn and computer generated images, of minors engaging in sexually explicit conduct, which conduct was prejudicial to good order and discipline of the Armed Forces or of a nature to bring discredit upon the Armed Forces.

Appellant's conviction for Specification 1 of The Charge, knowingly and wrongfully possessing two (2) images of child pornography [hereinafter actual child pornography], is correct in law and fact. Resolution of the providence of appellant's plea to knowingly and wrongfully possessing forty-one (41) "obscene virtual images" [hereinafter virtual child pornography], however, necessarily requires review of the providence inquiry into appellant's plea to the former as the military judge used definitions associated with the actual child pornography offense to advise appellant on and establish his providence for the virtual child pornography offense. Similarly, when discussing whether appellant's possession of virtual child pornography was conduct of a nature to bring discredit upon the Armed Forces, appellant bootstrapped statements he made during his plea colloquy for possession of actual child pornography to explain why his possession of virtual child pornography was service discrediting.

### A. Actual Child Pornography Providence Inquiry

After providing appellant with the elements associated with Specification 1 of The Charge, possession of actual child pornography, the military judge advised appellant of the relevant legal definitions. The military judge defined, *inter alia*, "child pornography" and "sexually explicit conduct" in accordance with 18 U.S.C. § 2256 (2006), advising appellant as follows:

"Child pornography" means any visual depiction including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where: a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; c) such visual depiction has been created, adapted, or modified to appear

3

> that an identifiable minor is engaging in sexually explicit conduct.
>
> . . .
>
> "Sexually explicit conduct" means graphic sexual intercourse including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or lascivious simulated sexual intercourse where the genitals, breasts, or pubic area of any person is exhibited; graphic or lascivious simulated; (sic) bestiality; (sic) masturbation; (sic) or sadistic or masochistic abuse; or graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. §§ 2256(8) and 2256(2)(B) (2006) respectively.

In defining "lascivious," an undefined term in 18 U.S.C. § 2256, the military judge provided a definition virtually identical to that provided in *United States v. Mauldin*:

> "Lascivious" means exciting sexual desires or marked by lust. Not every exposure of genitals or pubic area constitutes a lascivious exhibition. Consideration of the overall content of the visual depiction should be made to determine if it constitutes a lascivious exhibition. In making this determination, considered are such factors as whether the focal point of the depictions is on the genitals or pubic area, whether the setting is sexually suggestive, whether the child is depicted in an unnatural pose or in inappropriate attire considering the child's age, whether the child is partially clothed or nude, whether the depiction suggests sexual coyness or willingness to engage in sexual activity, whether the depiction is intended to elicit a sexual response in the viewer, whether the depiction portrays the child as a sexual object, and any captions that may appear on the depiction or the materials accompanying the depiction. A visual depiction, however, need not involve all of these factors to be a lascivious exhibition.

*United States v. Mauldin*, ARMY 2010647, 2011 WL 4905724, at *2 (Army Ct. Crim. App. 2011) (summ. disp.) (finding lascivious definition provided proper according the factors adopted by *United States v. Roderick*, 62 M.J. 425, 429-430

4

(C.A.A.F. 2006) and derived from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D.Cal. 1986)).

Although not required for a finding of guilt to Specification 1 of The Charge, possession of actual child pornography, the military judge defined "Obscene virtual images of minors engaging in sexually explicit conduct" as follows:

> "Obscene virtual images of minors engaging in sexually explicit conduct" means images that are distinguishable from an actual minor engaging in sexually explicit activity, but nonetheless, are depictions of minors or of what appears to be minors engaged in sexually explicit conduct.

Finally, the military judge defined service discrediting conduct as "conduct which tends to harm the reputation of the service or lower it in public esteem," the standard definition found in the Military Judges' Benchbook. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-60-2A.d. (1 Jan 2010).

When asked by the military judge why his possession of actual child pornography was service discrediting, the following colloquy occurred:

> ACC: Viewing child pornography is basically viewing child abuse – child sexual abuse, and if a civilian were to know that me being a service member were (sic) viewing said materials, it would bring the armed services into a lower esteem in the public eye.
>
> MJ: You mentioned earlier that your wife had discovered these images. Do you believe that in her eyes the military was somehow discredited by your actions?
>
> ACC: I wouldn't know, Your Honor.
>
> MJ: Nonetheless, you believe that were word to get out, and this is a public forum, your actions would lower the esteem in which the armed forces are held in the public?
>
> ACC: I believe so, Your Honor.

*B. Virtual Child Pornography Providence Inquiry*

In advising appellant on the elements and definitions for Specification 2 of The Charge, possession of virtual child pornography, the following colloquy occurred:

> [MJ]: In Specification 2 of The Charge, you are charged with possession of virtual child pornography, in violation of Article 134, UCMJ. In order for me to find you guilty of this offense, you must admit and I must find that:
>
> One, that on or about 27 July 2009[2] and 8 December 2009, at or near Fort Stewart, Georgia, you possessed 41 obscene virtual images of minors engaging in sexually explicit conduct; and
>
> Two, that such possession of obscene virtual images of minors engaging in sexually explicit conduct was prejudicial to the good order and discipline of the armed forces or was of a nature to bring discredit upon the armed forces.
>
> The Phrase "minors engaging in sexually explicit conduct" is a phrase that has a meaning equivalent to child pornography." I defined child pornography, to include the phrase "obscene virtual images of minors engaging in sexually explicit conduct" earlier.
>
> Would you like me to read those definitions again?
>
> ACC: No, Your Honor.
>
> MJ: All the other definitions that I provided for Specification 1 of The Charge are the same and apply equally to Specification 2 of The Charge.
>
> Would you like me to reread or reinstruct on any of those definitions?
>
> ACC: No, Your Honor.

---

[2] The pleadings allege misconduct between on or about 15 January 2009 and 8 December 2009, a fact later corrected by the military judge.

After noting the elements and definitions associated with Specification 2 of The Charge, the military judge engaged in a colloquy with appellant regarding why he was guilty of the offense as charged. At one point, the military judge asked appellant whether he believed the forty-one images in question "were of a minor engaged in sexually explicit conduct or images depicting art or the beauty of the human body?"[3] Appellant responded that they were images of "sexually explicit conduct." Neither the reason for the military judge's question nor its significance was discussed with or explained to appellant.

When the discussion shifted to whether appellant's conduct was service discrediting, the following colloquy occurred:

> MJ:  Were your actions in possessing these 41 images the type of conduct which is service discrediting?
>
> ACC:  Yes, Your Honor.
>
> MJ:  How so?
>
> ACC:  Same as Specification 1, whereas I believe an average everyday citizen wouldn't distinguish the two virtual -- actual being a difference.
>
> MJ:  I'm sorry?
>
> ACC:  I wouldn't assume that an everyday citizen would distinguish the difference between virtual child pornography and actual child pornography.
>
> MJ:  So what effect on that citizen would your possession of these images have?
>
> ACC:  That to them it would still depict child sexual abuse and to know that a service member was viewing these materials would bring discredit or lower the esteem of the armed services in the eye of the public.

---

[3] The military judge asked the same question during the providence inquiry into appellant's possession of actual child pornography, a question of no legal relevance or significance when dealing with actual child pornography as defined by 18 U.S.C. § 2256(8) (2006) as opposed to "obscene virtual images" in violation of 18 U.S.C. § 1466A(b) (2006).

### C. *Stipulation of Fact Definition of Virtual Child Pornography*

The stipulation of fact stated, in relevant part: "For the purposes of this stipulation of fact, the term virtual child pornography is defined as: visual depictions of any kind, including a drawing, cartoon, computer generated image, sculpture, or painting that depicts a minor engaging in obscene sexually explicit conduct." Obscene is undefined in the stipulation.

## LAW AND DISCUSSION

We conclude that the military judge abused his discretion by accepting appellant's guilty plea to possession of "obscene virtual images." In particular, the military judge failed to properly define the term "obscene" to appellant. The military judge compounded this error by not reconciling his definition of virtual child pornography with the definition in the stipulation of fact. Furthermore, we conclude that we cannot merely except the term "obscene" from Specification 2 and affirm a general disorder under Clause 2. We are not confident that appellant understood the legal consequences of possessing non-obscene virtual child pornography and whether possession of such images tends to bring discredit upon the armed forces. Accordingly, we find a substantial basis in law and fact to question to the providence of appellant's guilty plea.

### A. *OBSCENE VIRTUAL CHILD PORNOGRAPHY*

"During a guilty plea inquiry the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea before accepting it." *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). We review a military judge's decision to accept a plea for an abuse of discretion by determining whether the record as a whole shows a substantial basis in law or fact for questioning the guilty plea. *Id*. at 322; UCMJ art. 45; Rule for Courts-Martial [hereinafter R.C.M.] 910(e).

A knowing and voluntary plea requires the military judge to explain the elements of an offense to the accused and to elicit the factual basis of the offense. *United States v. Redlinski,* 58 M.J. 117, 119 (C.A.A.F. 2003) (citations omitted). Failure to do so constitutes reversible error unless "'it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty.'" *Id.* (quoting *United States v. Jones,* 34 M.J. 270, 272 (C.M.A. 1992)). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina,* 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *United States v. Care,* 18 U.S.C.M.A. 535, 538–39, 40 C.M.R. 247, 250–51 (1969)). An accused must understand "the nature of the charges brought against him . . . ." *Id.* (citations omitted). "[A]n accused has a

8

right to know to what offense and under what legal theory he or she is pleading guilty." *Id.* "An essential aspect of informing Appellant of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident. *See United States v. O'Connor,* 58 M.J. 450, 453 (C.A.A.F. 2003) (holding plea improvident due to erroneous definition of child pornography); *United States v. Pretlow,* 13 M.J. 85, 88–89 (C.M.A. 1982) (holding plea improvident where a military judge failed to define the substantive elements of conspiracy to commit robbery, a complex offense)." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004). "Where the record contains 'factual circumstances' that 'objectively support' the guilty plea to a more narrowly construed statute or legal principle, the guilty plea may be accepted." *Id*. (citations omitted).

"When a charge against a servicemember may implicate both criminal and constitutionally protected conduct, the distinction between what is permitted and what is prohibited constitutes a matter of 'critical significance.'" *United States v. Hartman*, 69 M.J. 467, 468 (C.A.A.F. 2011) (quoting *O'Connor*, 58 M.J. at 453). "With respect to the requisite inquiry into the providence of a guilty plea, *see United States v. Care*, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), and Rule for Courts-Martial 910, the colloquy between the military judge and an accused must contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." *Id*.

Virtual child pornography that is not obscene, unlike actual child pornography, implicates the First Amendment and the protections afforded speech. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (finding provisions of the Child Pornography Prevention Act that criminalized possession of virtual child pornography overbroad and in violation of the First Amendment). In addressing the implications of *Ashcroft*, our higher court noted, with respect to virtual child pornography, "[t]he Supreme Court has now extended a cloak of First Amendment protection to certain depictions of minors engaging in sexually explicit conduct." *O'Connor*, 58 M.J. at 454. If obscene, however, the images are not protected. "We have long held that obscene speech—sexually explicit materials that violate fundamental notions of decency—is not protected by the First Amendment." *United States v. Williams*, 553 U.S. 285, 288 (2008).

In appellant's case, the government charged that the images were "obscene virtual images," obscene being a legal term with constitutional implications. Whether material is obscene is subject to a three-part test:

> (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state

9

> law; and (c) whether the work, taken as a whole, lacks
> serious literary, artistic, political, or scientific value.

*Miller v. California*, 413 U.S. 15, 24 (1973) (internal citations omitted). At no time during the providence inquiry did the military judge define obscenity. The record is devoid of any mention or discussion of "community standards" and although one might argue that "prurient interest" and "artistic value" were covered when the military judge asked appellant whether the images "were of a minor engaged in sexually explicit conduct or images depicting art or the beauty of the human body," we specifically find otherwise. "The military judge did not explain to Appellant the significance of the question[], nor did the military judge ask Appellant whether he understood the relationship of the question[] and answer[] to the distinction [] between constitutionally protected behavior and criminal conduct." *Hartman*, 69 M.J. at 469 (simply asking appellant, in an Article 125, UCMJ consensual sodomy prosecution, to discuss the *Marcum* factors, *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004), factors that take consensual adult sodomy outside the constitutionally protected liberty interests recognized in *Lawrence v. Texas*, 539 U.S. 558 (2003), is insufficient to establish appellant knew of or understood the constitutional implications associated with the charged offense and that his actions fell outside of *Lawrence's* protected liberty interests).

In *Hartman,* a consensual sodomy prosecution, the trial counsel and military judge discussed *Lawrence* and *Marcum* prompting the military judge to ask Senior Technician Hartman questions meant to establish the *Marcum* factors, ostensibly removing his consensual sodomy from *Lawrence's* sphere of protected activity. Despite the responses provided, our superior court described Senior Technician Hartman as "a mere bystander" to the "discussion about legal theory and practice" that occurred between the military judge and trial counsel. *Hartman*, 69 M.J. at 469. The court went on to note, "In the absence of a dialogue employing lay terminology to establish an understanding by the accused as to the relationship between the supplemental questions and the issue of criminality, we cannot view Appellant's plea as provident." *Id.* Appellant in the case before us is no less a "mere bystander" than was Senior Technician Hartman when evaluating the military judge's "art or the beauty of the human body" question. Unlike in *Hartman*, appellant's record is silent regarding the military judge's purpose in asking his "art or the beauty of the human body" question. To conclude that the military judge asked the question to establish that the forty-one images in question were in fact obscene would be mere speculation. The fact that the military judge asked the same question during the providence inquiry into appellant's possession of actual child pornography detracts from, rather than supports, any obscenity-based purpose in positing the question, as obscenity is irrelevant to appellant's possession of actual child pornography. More importantly, there is no evidence in the record from which to conclude that appellant understood why the question was asked or the significance of his conclusory response.

Finally, the military judge never resolved the material inconsistency between the definition he provided for "obscene virtual images" and that stipulated to by the parties. The military judge told appellant that "'[o]bscene virtual images of minors engaging in sexually explicit conduct' means images that are distinguishable from an actual minor engaging in sexually explicit activity, but nonetheless, are depictions of minors or what appears to be minors engaged in sexually explicit conduct." The military judge's definition has obscenity modifying the images generally, images that need not be actual minors but are "depictions of minors or what appears to be minors engaged in sexually explicit conduct." However, the trial counsel, defense counsel, and appellant all agreed "[f]or the purposes of this stipulation of fact, the term virtual child pornography is defined as: visual depictions of any kind, including a drawing, cartoon, computer generated image, sculpture, or painting that depicts a minor engaging in obscene sexually explicit conduct." The stipulation between the parties has obscenity modifying or characterizing the sexually explicit conduct. The stipulation of fact inextricably links virtual child pornography with obscenity. A corollary to the parties' stipulation is that if the sexually explicit conduct is not obscene, then the images are arguably not virtual child pornography as charged.

The military judge should have reconciled the different definitions in play and obtained an understanding from appellant and the parties what obscene modified, the images or the conduct. The military judge should then have properly defined obscenity. Finally, the military judge should have obtained an acknowledgment from appellant that the images in question were in fact obscene, taking them out of the realm of potentially protected images. None of the above occurred in appellant's case.

## B. NON-OBSCENE VIRTUAL CHILD PORNOGRAPHY

Having found appellant's plea to Specification 2 of The Charge as written improvident, the appellee (i.e., government) urges us, in its pleadings before this court, to except the word "obscene" from the specification and affirm an Article 134, UCMJ, Clause 2 general disorder. The appellant, however, argues that the cursory discussion regarding service discrediting conduct during the providence inquiry, in light of *United States v. Wilcox*, falls short of the "direct and palpable connection between [the constitutionally protected behavior] and the military mission or environment" required to affirm an Article 134, UCMJ, Clause 2 conviction. *See United States v. Wilcox*, 66 M.J. 442, 448-449 (C.A.A.F. 2008).

We need not decide whether *Wilcox's* "direct and palpable" requirement is limited to the facts of that case, that is, to traditional speech in the form of the spoken or written word, or whether it's requirements reach all potentially protected speech to include images portraying virtual child pornography. On the facts of appellant's case and the providence inquiry before us, we find the providence inquiry insufficient to affirm an Article 134, UCMJ, Clause 2 general disorder.

11

As noted in the previous section, non-obscene virtual child pornography implicates the First Amendment and the protections afforded speech. *See generally Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); *see also*, *United States v. O'Connor*, 58 M.J. 450, 454 (C.A.A.F. 2003). Unlike civilians, however, servicemembers may be subject to limitations on speech, limitations that would otherwise be prohibited in the civilian community. "*Parker v. Levy* [417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)] reiterated the point that differences between the military community and civilian community result in military law that 'regulate[s] aspects of the conduct of members of the military which in the civilian sphere are left unregulated.'" *United States v. Wilcox*, 66 M.J. 442, 447 (C.A.A.F. 2008) (quoting *Parker*, 417 U.S. at 749, 94 S.Ct. 2547). Regarding possession of non-obscene virtual child pornography, our superior court noted, "the question of whether or not the possession of such visual depictions can be viewed as service discrediting now has a constitutional dimension." *United States v. O'Connor*, 58 M.J. 450, 454 (C.A.A.F. 2003). Notwithstanding the constitutional dimension noted in *O'Connor*, prosecution for possessing non-obscene virtual child pornography as an Article 134, Clause 1 or Clause 2 offense is authorized. *See United States v. Mason*, 60 M.J. 15, 20 (C.A.A.F. 2004); *United States v. Brisbane*, 63 M.J. 106, 116 (C.A.A.F. 2006); *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011). Any analysis of whether the evidence is sufficient to establish the Clause 1, prejudice to good order and discipline, or Clause 2, service discrediting element is "undertaken on a case-by-case basis." *Mason*, 60 M.J. at 19. *See also*, *United States v. Forney*, 67 M.J. 271, 274-75 (C.A.A.F. 2009) (holding that receipt and possession of virtual child pornography is also punishable as a violation of Article 133, UCMJ, conduct unbecoming an officer and gentlemen).

The focus of appellant's providence inquiry regarding the virtual child pornography was on the sexually explicit nature of the images. The providence inquiry did not, as previously noted, distinguish between unprotected obscene virtual images and potentially protected non-obscene virtual images. The only definitions provided, either by the military judge or stipulated to, inexorably linked virtual child pornography to obscenity. It is clear appellant knew he had images indistinguishable from those of actual minors engaging in sexually explicit conduct. What is unclear, however, is an understanding by appellant that possession of the images in question was criminal regardless of their status as obscene or non-obscene.

The presence of obscenity in the pleadings, the definitions provided by the military judge during the providence inquiry, the military judge's failure to reconcile the obvious differences related to the use of the word obscene, the military judge's failure to define obscene, and the absence of any discussion regarding non-obscene virtual child pornography separate and apart from obscenity precludes us from finding that appellant "clearly understood the nature of the prohibited conduct"

under a Clause 2 theory. Therefore, we decline the government's suggestion to affirm an Article 134, UCMJ, Clause 2 general disorder for possession of non-obscene virtual child pornography by excepting "obscene" from Specification 2 of The Charge.

Having found appellant's plea to Specification 2 of The Charge improvident, we now turn to the impact, if any, on appellant's sentence.

## C. SENTENCE REASSESSMENT

Appellant was sentenced using a maximum period of confinement of twenty years (ten years for Specification 1 of The Charge and ten years for Specification 2 of The Charge).[4] If the military judge had properly defined obscenity and discussed such with appellant, ten years would have been the proper maximum punishment for Specification 2 of The Charge. Having failed to properly define obscenity, appellant's plea to Specification 2 of The Charge, was at best a plea to a general disorder offense under Article 134, UCMJ, Clause 2, carrying with it a maximum period of confinement of four months, *United States v. Beaty*, 70 M.J. 39, 45 (C.A.A.F. 2011), reducing his maximum exposure from twenty years to ten years and four months. Our finding that appellant's plea to Specification 2 of The Charge, both as written and as a general disorder offense, is improvident, reduces appellant's maximum period of confinement from twenty years to ten years.

If we "can determine that, absent the error, the sentence would have been at least of a certain magnitude, then [we] may cure the error by reassessing the sentence instead of ordering a sentencing rehearing." *United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F. 2002) (citing *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)). A sentence can be reassessed only if we "confidently can discern the extent of the error's effect on the sentencing authority's decision." *United States v. Reed*, 33 M.J. 98, 99 (C.M.A. 1991). A "dramatic change in the 'penalty landscape'"

---

[4] The record is silent on how the parties arrived at twenty years confinement. Looking at Rule for Courts-Martial 1003(c)(1)(B)(ii) and finding no closely related offense in the Manual for Courts-Martial, the parties presumably looked to Title 18 of the United States Code as Specification 1 of The Charge alleges every element of an 18 U.S.C. § 2252A(a)(5)(B) offense except for the jurisdictional nexus and Specification 2 of The Charge alleges every element of an 18 U.S.C. § 1466A(b)(1) offense except for the jurisdictional nexus. Absent exceptional circumstances allowing for greater punishment than ten years, circumstances not present in appellant's case, violations of 18 U.S.C. § 2252A(a)(5)(B) and 18 U.S.C. § 1466A(b)(1) each carry with them a maximum period of confinement of 10 years. *See* 18 U.S.C. § 1466A(b) and § 2252(b)(2) (2006).

lessens our ability to reassess a sentence. *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003).

Appellant stands convicted of knowingly and wrongfully possessing two (2) images of actual child pornography. The stipulation of fact documents that appellant viewed child pornography for "about ten years" and that he "downloaded scores of images of child pornography," admissions made separate and apart from any admissions related to virtual child pornography. Appellant acknowledged and admitted that the actual child pornography he sought for nearly a decade is: "a form of sexual abuse which can result in physical and psychological harm or both, to the children involved;" permanent evidence of the victims' abuse; and, a source of "continuing harm" to its children victims.

Although the maximum period of confinement is reduced from twenty years to ten years, the sentencing landscape has not dramatically changed. Stated another way, a near fifty percent reduction in appellant's maximum confinement exposure, in and of itself, does not constitute a dramatic change in sentencing landscape as landscape encompasses more than just the period of authorized confinement. *See United States v. Pleasant*, 71 M.J. 709, 717-18 (Army Ct. Crim. App. 2012). It includes, among other things, the nature and extent of the aggravation evidence properly before the sentencing authority on the remaining charges and by whom appellant was sentenced (i.e., judge alone versus a panel). Appellant elected trial before a judge alone and we are "more likely to be certain of what a military judge alone would have done than what a panel of members would have done." *United States v. Moffeit*, 63 M.J. 40, 43 (C.A.A.F. 2006) (Baker, J., concurring in result). Finally, we have significant experience and familiarity with the remaining offense, possession of actual child pornography, and can reliably assess what sentence a military judge would have imposed on the remaining finding of guilt. *Id*.

Consequently, we are confident the military judge would have adjudged a sentence no less severe than that approved by the convening authority in this case. We find appellant suffered no material prejudice to a substantial right. UCMJ, art. 59(a). We further find that the sentence approved by the convening authority is appropriate. *See* UCMJ, art. 66.

**CONCLUSION**

Upon consideration of the entire record and the submissions by the parties, the finding of guilty of Specification 2 of The Charge is set aside. The remaining findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion, the sentence, as approved by the convening authority, is AFFIRMED. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge KERN and Judge Martin concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court