# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39651**

———————————

**UNITED STATES**
*Appellee*

**v.**

**QAASIM R. JOHNSON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 29 July 2020

———————————

*Military Judge:* Matthew D. Talcott (pretrial); Charles G. Warren (initial arraignment); Christopher M. Schumann.

*Approved sentence:* Dishonorable discharge, confinement for 2 years, and reduction to E-1. Sentence adjudged 3 January 2019 by GCM convened at F.E. Warren Air Force Base, Wyoming.

*For Appellant:* Major David A. Schiavone, USAF.

*For Appellee:* Colonel Shaun S. Speranza, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and RAMÍREZ, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge MINK and Senior Judge LEWIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RAMÍREZ, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, pursuant to his pleas and pretrial agreement (PTA), of three specifications of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928;[1] one specification of child endangerment, one specification of leaving the scene of the accident, and one specification of communicating a threat in violation of Article 134, UCMJ, 10 U.S.C. § 934; one specification of failing to obey a lawful order in violation of Article 92, UCMJ, 10 U.S.C. § 892; and one specification of physically controlling a vehicle while drunk in violation of Article 111, UCMJ, 10 U.S.C. § 911. Pursuant to the PTA, the remaining charges and specifications were withdrawn and dismissed with prejudice after arraignment.[2]

The military judge sentenced Appellant to a dishonorable discharge, confinement for 30 months, and a reduction to E-1. Pursuant to the PTA, the convening authority deferred the mandatory forfeitures until action, and waived the mandatory forfeitures to be paid for the benefit of Appellant's spouse and child. Also pursuant to the PTA, the convening authority approved only two years of confinement and the remainder of the adjudged sentence.

On appeal, Appellant raises three issues: (1) whether the military judge abused his discretion in accepting Appellant's guilty plea to disobeying a lawful order; (2) whether his right to counsel was violated when military law enforcement questioned him without legal representation; and (3) whether Appellant's trial defense counsel was ineffective.[3] We find no error substantially prejudicial to Appellant's material rights, and we affirm the findings and sentence.

## I. BACKGROUND

The evidence in this case, which led the military judge to accept Appellant's pleas of guilt, consisted of a stipulation of fact and Appellant's sworn

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] These included two specifications under Article 120, UCMJ, 10 U.S.C. § 920, five specifications under Article 128, UCMJ, 10 U.S.C. § 928, and one specification under Article 134, UCMJ, 10 U.S.C. § 934.

[3] Appellant personally asserts issues (2) and (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

testimony in response to the military judge's questions. The evidence is summarized below.

## A. The Assaults and Child Endangerment

Appellant entered active duty in the United States Air Force on 20 January 2015 and arrived on station at F.E. Warren Air Force Base (AFB), Wyoming, on 20 July 2015. He was assigned to the 90th Security Forces Squadron (90 SFS).

In August of 2016, Appellant and his wife, SJ, were moving into their on-base residence. During the move, Appellant became intoxicated. At one point, SJ confronted Appellant about relations with other women. In response, Appellant pushed SJ, who was 15 weeks pregnant at the time, from behind, and she fell, face first, onto her stomach.

In February 2017, SJ was lying in bed with their newborn daughter. Appellant was intoxicated, and he invited their dog onto the bed. When SJ asked Appellant to remove the dog from the bed, Appellant became angry and told SJ "you still talkin' sh*t?" and then slapped SJ on the face with an open hand.

On 4 November 2017, Appellant and SJ were arguing at their apartment. During the argument Appellant was intoxicated. Appellant told SJ to "shut the f**k up," then SJ left the room, but Appellant followed her and continued the argument. At one point SJ took their 10-month-old daughter and went into the guest room and locked herself in that room. Appellant, however, kicked in the door, breaking it in half. In the guest bedroom, SJ held the child in her arms. Appellant then grabbed a curtain rod and began to strike SJ with the curtain rod while she still held their child.

## B. Driving Under the Influence[4] (DUI) and Related Offenses

On 10 November 2018, Appellant, who was intoxicated, was driving his Nissan vehicle on F.E. Warren AFB when he struck another vehicle at the base shoppette. After the collision, Appellant asked the other driver if she was okay. Appellant then drove away without identifying himself or exchanging information with the other driver. Two witnesses to the collision followed Appellant to his dorm room and convinced Appellant to return with them to the scene of the accident. One of the witnesses suspected Appellant was under the influence of alcohol and communicated this suspicion to law enforcement personnel upon returning to the scene.

---

[4] The Court recognizes that Article 111, UCMJ, is "Drunken Operation of a Vehicle," however, the reference to driving under the influence is used as it was used in the record and the filings in this case.

After Appellant returned to the scene, law enforcement personnel detected a strong smell of alcohol on Appellant's breath and observed Appellant had slurred speech, glassy eyes, and difficulty maintaining his balance. Accordingly, law enforcement personnel transported Appellant to the SFS building for an interview. Appellant was advised of his Article 31, UCMJ, 10 U.S.C. § 831, rights, and he invoked those rights by requesting to speak with an attorney. Although Appellant was never interrogated, he did make several spontaneous statements. For example, Appellant told Technical Sergeant (TSgt) KM, a responding 90 SFS member, that the First Sergeant "is a piece of sh*t and an a**hole." He also told Staff Sergeant (SSgt) MR and Airman First Class (A1C) MH, both 90 SFS members, that he would injure or kill personnel of the 90 SFS by being an "active shooter." Specifically, Appellant said, "You are lucky I let you cuff me," then yelled, "I'll be AWOL by Monday! I'll f**k up all of you! I'll take a sh*t on your pimp hat. Write that the f**k down on your f**king paper! I don't care who the f**k you are. I'll do whatever I want. The Shirt doesn't do anything for me, best believe I [will] come back as an active shooter."[5] Also, when law enforcement personnel attempted to obtain consent for a breath sample or to provide a blood sample, Appellant stood up, balled his fists at Master Sergeant (MSgt) JW, and stated, "why the f**k am I here? I didn't do sh*t wrong. I didn't hit and run." MSgt JW reminded Appellant that he had requested an attorney and told him to stop talking. Nonetheless, throughout this process, Appellant repeatedly attempted to tell TSgt KM and SSgt MR his version of the events, and they continued to remind him that he had requested an attorney.

Later that evening, a military magistrate granted search authorization to seize a sample of Appellant's blood for alcohol testing. Lieutenant Colonel (Lt Col) NP, the 90 SFS commander, ordered Appellant to provide a blood sample for alcohol testing, and MSgt JW communicated that order to Appellant. Appellant was then transported to the base medical clinic, but he ultimately refused to provide the blood sample. At his court-martial, Appellant explained to the military judge, under oath, that he understood that he had a duty to obey Lt Col NP's order, and that he "was required to give a blood sample for alcohol levels." He further explained the order was relayed to him by one of the noncommissioned officers, and even though he had been drinking, he understood the order. Appellant told the military judge that the order related to the drunk driving hit and run and "they were conducting an investigation, and also that

---

[5] It was these statements that formed the factual basis of the offense of communicating a threat, to which Appellant pleaded guilty at trial.

it came down from my commander, and it was channeled down through my NCOs that were in charge me, and that is what makes it lawful, sir."

After Appellant refused to provide a blood sample at the medical clinic, he was taken back to the security forces squadron. At the SFS building, Appellant asked how long he would be there. He was instructed that they still needed to finish up paperwork for the accident and obtain his alcohol content by breath or blood. Appellant then asked if he would "get out of here faster if [he did the] intoxilizer?" Appellant was told that it would help law enforcement move faster as this was what was causing a delay in processing. Appellant responded, "F**k it. Let's do it then" and stood up to complete the intoxilizer. The test was accomplished approximately three hours after the hit and run accident and had a breath alcohol content result of 0.276.

## II. DISCUSSION

### A. Providence of Appellant's Guilty Plea to Disobeying a Lawful Order

#### 1. Law

"We review a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation omitted). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted). A military judge has the responsibility to question the accused under oath with regards to the offenses to ensure there is an adequate factual basis for a guilty plea. *United States v. Mull*, 76 M.J. 741, 744 (A.F. Ct. Crim. App. 2017) (citing Rule for Courts-Martial 910(e); Article 45(a), UCMJ, 10 U.S.C. § 845(a)). A military judge abuses his discretion if he accepts a guilty plea without an adequate factual basis. *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012). This court looks to the entire record to determine whether there is a substantial basis to question the guilty plea. *See United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002).

A plea is provident as long as Appellant is able to describe all of the facts necessary to establish his guilt and is convinced of his guilt. *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (internal quotation marks and citation omitted).

"This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (internal quotation marks

and citation omitted). "To prevail, [an a]ppellant has the burden to demonstrate a 'substantial basis in law and fact for questioning the guilty plea.'" *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F 2004) (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). "The Court applies this 'substantial basis' test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea." *United States v. Hobbs*, 2011 CCA LEXIS 138, at *3–4 (A. Ct. Crim. App. 29 Jul. 2011) (unpub. op.) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)).

In reviewing the providence of an appellant's guilty pleas, "we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (quoting *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007)).

Article 66(c), UCMJ, 10 U.S.C. § 866(c), makes clear that this court "may act only with respect to the findings and sentence approved by the convening authority." Additionally, this court "may affirm only such findings of guilty . . . as [the court] finds correct in law and fact and determines, on the basis of the *entire record*, should be approved." *Id.* (emphasis added).

### 2. Analysis

In attacking the providence of his guilty plea, Appellant argues two points. First, Appellant argues that the military judge abused his discretion when he accepted the guilty plea for failing to obey Lt Col NP's order because the stipulation of fact was in substantial conflict with Appellant's statements during the providence inquiry. Second, Appellant argues that the military judge abused his discretion because the stipulation of fact was internally inconsistent and in substantial conflict with the other evidence in the "record of trial." We will address each contention separately.

### a. *Stipulation of Fact: Conflict with Providence Inquiry*

Appellant claims that because, during the providence inquiry, he used the phrase "NCOs" (noncommissioned officers) instead of *senior* noncommissioned officer (when referring to MSgt JW) as was in the stipulation of fact, this created a substantial conflict between Appellant's statements during the providence inquiry and the stipulation of fact. We disagree.

Before discussing the stipulation of fact with Appellant, the military judge explained to Appellant that he wanted to give Appellant an opportunity to read through the stipulation silently to himself before they discussed it. The military judge explained that a stipulation of fact ordinarily cannot be contradicted, but if it is contradicted after the guilty plea, he would reopen the providence inquiry. Appellant told the military judge that he understood that now would be the point to tell him if there was anything that he disagreed with or

felt was untrue in the stipulation. Appellant did not articulate anything that he disagreed with or felt was untrue in the stipulation. Instead, after Appellant told the military judge that he had finished reading the stipulation to himself, Appellant answered in the affirmative that everything in the stipulation was true; that there was nothing in the stipulation that he did not wish to admit was true; and that he agreed, under oath, that the matters contained in the stipulation were true and correct to the best of his knowledge and belief.

The stipulation of fact stated that Lt Col NP, through MSgt JW, verbally ordered Appellant to provide a blood sample, and that TSgt KM and SSgt MR transported Appellant to the medical clinic.

During the providence inquiry, the military judge explained the elements of the offense to Appellant, and stated that by pleading guilty Appellant was admitting

> [f]irst, that a member of the Armed Forces, namely [Lt Col NP], issued a certain lawful order to provide a blood sample; [t]wo, that [Appellant] had knowledge of the order; [t]hree, that [Appellant] had a duty to obey the order; and [f]our, that on or about 10 November 2018, at or near [F.]E. Warren Air Force Base, Wyoming, [Appellant] failed to obey the order.

The military judge then asked how the order was communicated to him. Appellant said, "Through one of the Sergeants, sir." He then answered "yes" to the military judge's follow-on questions: "Was that order relayed to you clearly? Did you understand the order?" It was actually the military judge who used the phrase "NCO." Appellant answered "yes" when the military judge asked, "When the NCO said hey, you're being ordered to provide a blood sample, was that clear to you at the time?" It was after the military judge used the term "NCO" that Appellant used the term. Appellant, in his own words, said he understood the order was lawful "[b]ecause they were conducting an investigation, and also that it came down from my commander, and it was channeled down through my NCOs that were in charge me, and that is what makes it lawful, sir."

Even if Appellant is correct that there is a discrepancy between the stipulation of fact and the providence inquiry as to whether the person communicating the order was a noncommissioned officer rather than a *senior* noncommissioned officer, we find this distinction by Appellant *de minimis* at best and

therefore not a substantial conflict.[6] *See Negron*, 60 M.J. at 141 (finding appellant's plea improvident due to military judge's erroneous use of the definition of "indecent acts" to evaluate alleged "indecent language" charge). The order Appellant violated alleged that he had to have "knowledge of a lawful order issued by [Lt Col NP] to provide a blood sample," an order which it was his duty to obey. The law does not require that a specific person communicate the order to Appellant; it requires only that the order was communicated to him by his commander, and that he had knowledge of the order. That was, in fact, proven.

Neither Appellant nor the evidence set up a matter inconsistent with the plea at any time during the proceeding. As such, the military judge was not required to resolve an apparent inconsistency or reject the plea.

### b. *Stipulation of Fact: Internal Inconsistencies*

Appellant next claims that the stipulation of fact is internally inconsistent because paragraphs 21 and 23 of the stipulation of fact each purport that different events occurred immediately following Appellant's rights advisement. Appellant claims that paragraph 21 states that "immediately" after the rights advisement, a military magistrate granted proper search authorization for Appellant to provide a blood sample, while paragraph 23 states that "immediately" after the rights advisement, there was a request for Appellant to consent to a breath test or a blood sample. We find Appellant's interpretation of these paragraphs to be unpersuasive.

The word "immediately" is not written into either paragraph 21 or 23 of the stipulation of fact. Additionally, neither paragraph indicates the timing of requesting consent versus receiving search authorization or being given an order to provide blood. Appellant claims that it defies "common sense" for law enforcement to seek consent when they believe they have search authorization. We disagree. Appellant agreed under oath all the facts in the stipulation of fact were true, and that he wanted to admit they were true. Appellant raised no dispute with the content of paragraphs 21 and 23 at his trial. Trial defense

---

[6] It seems logical to conclude that MSgt JW told Appellant about Lt Col NP's order to provide a blood sample before Appellant was taken to the medical clinic, that TSgt KM and SSgt MR transported Appellant to the medical clinic, and that TSgt KM and SSgt MR reiterated Lt Col NP's order prior to Appellant disobeying the order. However, the order of events is not completely clear from the evidence. While we may draw this reasonable inference from the stipulation of fact, the sworn witness statements, and the providence inquiry, we need not do so to reach our conclusion. *See United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013).

counsel did not object when the stipulation of fact was offered into evidence. The military judge also reviewed the stipulation of fact before admitting it into evidence. The military judge made no mention of the possibility of a conflict between the two paragraphs, let alone a substantial conflict. Simply put, we find no substantial conflict between the two paragraphs.[7]

## B. Right to Counsel During Law Enforcement Questioning

### 1. Additional Facts

As an initial matter, we considered Appellant's declaration to resolve the raised issues. *See United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020) (Courts of Criminal Appeals may consider affidavits when doing so is necessary for resolving issues raised by materials in the record). According to Appellant's declaration of 16 September 2019 under penalty of perjury and accepted by this court, military law enforcement called Appellant in to speak with them on multiple occasions without allowing him to have his counsel present. He identifies three occasions when this occurred: 31 July 2017, 6 November 2017, and 11 January 2018.

As it relates to this issue and pursuant to a PTA, Appellant pleaded guilty to three separate specifications of assault consummated by a battery and one specification of child endangerment. Pursuant to the PTA, Appellant waived all waivable motions, and we find that he waived any issue regarding the alleged denial of his right to counsel.

### 2. Law

When an appellant alleges his confession was involuntary because he was denied his right to counsel, this court applies an abuse of discretion standard if a motion to suppress was filed. *See United States v. Aaron*, 54 M.J. 538, 543 (A.F. Ct. Crim. App. 2000). However, "[b]y entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *United States v. Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) (quoting *United States v. Broce*, 488 U.S. 563, 570 (1989)) (internal quotation marks omitted). An "unconditional plea of guilty

---

[7] Appellant further relies on information contained in the security forces' blotter entry to claim that other evidence in the record of trial further contradicts paragraph 21 of the stipulation of fact. However, the blotter entry was not marked as a prosecution or defense exhibit, nor an appellate exhibit, and therefore not relied upon by the military judge to determine whether or not to accept Appellant's plea. Instead, the blotter was only attached to the record as a pretrial allied paper. We decline Appellant's invitation to delve into the record of trial's pretrial allied papers to resolve whether his plea of guilty was provident. "[E]vidence from outside the record will not be considered by appellate authorities to determine anew the providence of the plea." *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980) (citation omitted).

waives all nonjurisdictional defects at earlier stages of the proceedings." *Id.* (quoting *United States v. Lee*, 73 M.J. 166, 167 (C.A.A.F. 2014) (internal quotation marks omitted)).

### 3. Analysis

We find Appellant waived this issue. As explained above, Appellant pleaded guilty and received the benefit of the PTA. The military judge accepted Appellant's guilty plea after a providence inquiry. During the inquiry, Appellant acknowledged that the PTA contained all of the agreements and understandings, and no one had made any promises to him that were not in the written agreement. Appellant and his trial defense counsel acknowledged they had enough time and opportunity to discuss Appellant's case. Appellant stated that he did not have any questions as to the meaning and effect of his pleas of guilty and that he fully understood the meaning and effect of his plea. More importantly, Appellant acknowledged that the "waive all waivable motions" provision in the agreement may prevent appellate review of those issues. Trial defense counsel also stated the defense originated the waiver of motions provision in the agreement and listed several motions that were "contemplated" including a potential motion to suppress the statements Appellant made "on the night of the DUI/accident."

The military judge then explained to Appellant that had the motions been raised at a trial and granted, they may have resulted in evidence being suppressed or charges being dismissed. Appellant stated he understood this. The military judge then asked that with this knowledge, if he "still want[ed] to give up making any of these motions so that [he] could get the benefit of [his PTA]." Appellant said yes.

It is clear from the record that Appellant's guilty plea was unconditional. This issue is not a jurisdictional defect. Therefore, Appellant's unconditional guilty plea waived this issue. Because we find Appellant's unconditional guilty plea extinguished his ability to raise this issue on appeal, we decline to review the issue on this basis. We acknowledge our discretion to pierce waiver to correct a legal error under Article 66, UCMJ, 10 U.S.C. § 866. *See generally Hardy*, 77 M.J. at 442–43 (C.A.A.F. 2018) (citation omitted). We decline to disturb Appellant's waiver.

## C. Ineffective Assistance of Counsel

### 1. Additional Facts

While Appellant's interactions with his trial defense counsel are not normally relevant on appeal, he has made them relevant by raising an ineffective assistance of counsel claim. *See United States v. Mays*, 33 M.J. 455, 458 (C.M.A. 1991) (citations omitted) ("[A] military accused has a privilege to prevent the unauthorized disclosure of his confidential communications to his attorney[,] .

. . [but] the privilege is limited, particularly where the servicemember claims his attorney breached his duty to provide effective assistance of counsel.").

As noted above, we granted Appellant's motion to attach his declaration of 16 September 2019 in which he states, "I accepted a plea deal to get to trial faster and get out of pretrial confinement so I could see my family . . . ." Appellant now claims he is not guilty of assault or child endangerment. Instead, he claims "[t]he legal office told [his] attorney that they would only drop the sexual assault charges if [he] pleaded guilty to everything else."

Appellant does not "feel like [he] had effective legal representation." He opines that he should have only been charged with DUI, fleeing the scene of the accident, and communicating a threat. Appellant alleges he "was advised that [he] needed to plead guilty to the assault charges because if [he] didn't, [he] would have to register as a sex offender."

Trial defense counsel, Captain (Capt) CG, represented Appellant throughout the court-martial process. We ordered a declaration from Capt CG and granted a government motion to attach it to the record of trial. His declaration generally refutes Appellant's assertions.

Capt CG advised Appellant "that he should only plead guilty if he committed the offenses with which he was charged;" "that, in exchange for his guilty plea, the Government would withdraw and dismiss the two Article 120 charges;" "that a guilty plea would eliminate any risk of having to register as a sex offender;" "that if [Appellant] chose to go to trial he could be found guilty of all charges, including the Article 120 charges;" and "that if, and only if, he were found guilty of the Article 120 charges, he would have to register as a sex offender."

Capt CG stated Appellant told him several different versions of events about the assaults and child endangerment, including (1) that SJ was not holding the child; (2) that SJ was holding the child and holding a knife to her own throat so Appellant hit her with a curtain rod to make her drop the child; and (3) that the child was sitting near SJ, and she was holding a knife to her own throat and Appellant hit SJ with a curtain rod to make her drop the knife in the presence of the child. Additionally, Appellant would go to Capt CG's office at least once a week with a new or different version of events. In an effort to try to verify Appellant's versions of events, Capt CG made several attempts to speak to SJ, reviewed physical evidence, reviewed documents and reports from the AFOSI, and discussed the case at length with several AFOSI agents as well as the Chief of Military Justice of the base legal office. Capt CG found no evidence to verify Appellant's multiple versions of events. Instead, Appellant admitted to Capt CG and his defense paralegal that he hit SJ with a curtain rod in the presence of their child, and that he hit SJ multiple times with the curtain

rod and continued to hit her after she had dropped the knife. Appellant also admitted to Capt CG and the defense paralegal that he had a drinking problem, and that he had been drinking heavily when the child endangerment occurred.

With regards to Appellant's claim that SJ was making up the allegations, Capt CG looked into it, and she never told Capt CG that she made up the allegations against Appellant nor did she otherwise recant. Capt CG found SJ's version of events consistent and the photos of physical injuries corroborated her account. Additionally, Appellant's mother once stated she "believed" SJ had made up the allegations, but Appellant's mother had no evidence to back up her belief, and she never indicated that SJ told her she had made it up.

**2. Law**

We review allegations of ineffective assistance of counsel de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

The Sixth Amendment[8] guarantees one charged with a criminal offense the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Gilley*, 56 M.J. at 124. We begin with the presumption of competent counsel. *Id*. Accordingly, "we will not second-guess the strategic or tactical decisions made at trial by defense counsel." *Mazza*, 67 M.J. at 475 (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)) (internal quotation marks omitted).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch*, 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

---

[8] U.S. CONST. amend. VI.

In making our determination we consider Appellant's and trial defense counsel's declarations as doing so is necessary for resolving issues raised by materials in the record. *See Jessie*, 79 M.J. at 444–45.

**3. Analysis**

Appellant alleges that the performance of his trial defense counsel was deficient in the following respects: (1) trial defense counsel failed to investigate Appellant's versions of events to the assault specifications and failed to investigate his claims that SJ made up the allegations, and that SJ told Appellant's mother that she made them up; (2) trial defense counsel allowed Appellant to accept a plea deal simply to get to trial faster and get out of pretrial confinement, but perhaps knowing that Appellant was not guilty of assault or child endangerment (although Appellant acknowledged he was guilty of other offenses); and (3) trial defense counsel advised Appellant that he needed to plead guilty to the assault charges because if he did not, he would have to register as a sex offender.

As explained above, Capt CG's declaration generally refutes Appellant's assertions. Because we are presented with conflicting declarations, we must consider whether a post-trial evidentiary hearing is required in this case. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam).

In doing so, we apply the principles articulated in *Ginn* including, *inter alia*:

> [I]f the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.
>
> . . .
>
> [I]f the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.
>
> [W]hen an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

47 M.J. at 248. Applying these principles to the record before us, we find an evidentiary hearing is not required, and Appellant is not entitled to relief.

Here, Appellant's claim of ineffective representation contradicts matters within the record of his guilty plea, including the admissions made in the plea inquiry and Appellant's expression of satisfaction with counsel at trial.

In the stipulation of fact Appellant signed, he agreed that the statements which amounted to the elements of the assault and child endangerment specifications were factual, were true, and were admissible for findings and sentencing. These statements included that Appellant pushed SJ from behind, and that she fell, face first, onto her stomach on the carpet while she was 15 weeks pregnant; that Appellant struck SJ with a curtain rod while she had their baby in her arms; and that Appellant struck SJ on her face with his hand.

In addition to the stipulation of fact, the providence inquiry, as discussed below, leads us to find that he is not entitled to relief.

During the providence inquiry regarding assault consummated by battery (grabbing SJ's body with his hands), the military judge read each element of the assault offense. For this specification, Appellant admitted, under oath, that the elements accurately described what he did. Additionally, Appellant articulated, under oath, in his own words, why he was guilty of the offense. Specifically, he admitted that he "grabbed [SJ] and pushed her down," and he agreed that this amounted to bodily harm. Appellant went on to explain that they were "arguing . . . and then as she was walking away, [he] pushed her down." At the conclusion of the inquiry, Appellant provided the opportunity to describe in his own words why he felt he was guilty:

> In August 2016, [SJ] and I had an argument, where she questioned me about other females. She became very angry, pushed me a few times during the argument. I was intoxicated and also became angry. I grabbed [her] and pushed her to the ground. I was not acting in self-defense, because I did not fear bodily harm from her pushing me, and when I grabbed and pushed her, she was walking away from our argument.

During the providence inquiry regarding assault consummated by battery (striking SJ's body with a curtain rod), Appellant explained that:

> [i]n November 2017, I did hit [SJ] with a curtain rod. I was extremely intoxicated, and I remember [SJ] holding a knife threatening to harm herself. I initially picked up the curtain rod and knocked down the door, because I did not want her to harm herself. Although I only remember hitting her once with the curtain rod, I can see that even once was excessive and not in defense of another. I do not remember hitting her more than once, or her

14

holding our child when I hit her, but based on my level of intoxication, coupled with the photos that show multiple bruises, I do not disagree with the fact that I hit her more than once and that she was holding our child when I hit her with the curtain rod.

During the providence inquiry regarding assault consummated by battery (striking SJ on her face with his hand), Appellant stated, "In February 2017, I had been drinking and [SJ] and I got into a heated argument about the dog being on the bed. The argument got heated, and I ultimately slapped her."

During the providence inquiry regarding child endangerment, Appellant stated that it was the same incident as the assault involving the curtain rod but went on to explain that he did "not dispute the fact that [he] hit [SJ] more than once, and that she was holding [their] child when [he] hit her with the curtain rod."

Appellant told the military judge that no one tried to force him to enter into his PTA or to plead guilty; that he was pleading guilty not only because he hoped to receive a lighter sentence, but also because he was convinced that he was, in fact, guilty; that he had enough time and opportunity to discuss the case with his defense counsel; that he consulted fully with his defense counsel and received the full benefit of his advice; that he was satisfied that his defense counsel's advice was in his best interest; that he was satisfied with his defense counsel; that he was pleading guilty voluntarily and of his own free will; and that he fully understood the meaning and effect of a plea of guilty and of his plea of guilty.

In his declaration, Appellant did not set forth any facts that would rationally explain why he would have made such statements at trial but not upon appeal.

The record compellingly demonstrates the improbability of Appellant's claims that trial defense counsel failed to investigate Appellant's versions of events to the assault specifications and failed to investigate his claims that SJ made up the allegations. Similarly, the record makes clear the unlikelihood of trial defense counsel allowing Appellant to accept a plea deal simply to get to trial faster and get out of pretrial confinement, or that trial defense counsel allowed this to happen knowing that Appellant was not guilty of assault or child endangerment. Finally, the record compellingly demonstrates the improbability of Appellant's claim that trial defense counsel advised Appellant that he needed to plead guilty to the assault charges because if he did not, he would have to register as a sex offender.

Additionally, in light of the record, we conclude Appellant has failed to rationally explain why he would swear to the military judge that he wanted to

plead guilty and was in fact guilty, if that was not the case. We therefore conclude that Appellant has failed to overcome the presumption of competent counsel. *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987).

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[9]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[9] The general court-martial order incorrectly identifies Additional Charge II as a violation of Article 134, UCMJ, when it should be a violation of Article 111, UCMJ; and incorrectly identifies Additional Charge III as a violation of Article 111, UCMJ, when it should be a violation of Article 134, UCMJ. We order a corrected general court-martial order.